Paul L. Vorndran
Albert B. Sahlstrom
Jones & Keller, P.C.
1675 Broadway, 26th Floor
Denver, CO  80202
Phone:        303-573-1600
Email pvorndran@joneskeller.com
        asahlstrom@joneskeller.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Case No.: 21-cv-01669-CAB-MSB |
| Plaintiff, | **DEFENDANTS' PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM IN SUPPORT** |
| vs. | |
| CHOICE ADVISORS, LLC and MATTHIAS O'MEARA | Date: November 1, 2021 |
| Defendants | Honorable Cathy Ann Bencivengo |
| | **NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED** |

PLEASE TAKE NOTICE that on December 13, 2021 before the Honorable

Cathy Ann Bencivengo, Defendants Matthias O'Meara ("Mr. O'Meara") and

Choice Advisors, LLC ("Choice"), through their undersigned counsel, will

respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss

in part the Complaint and Jury Demand (ECF No. 1) ("Complaint") filed by the

United States Securities and Exchange Commission ("SEC" or "Plaintiff") for failure to state a claim upon which relief may be granted.

This Motion is based upon this Notice and the Memorandum herein, and the pleadings and other papers on file in this action, including the exhibits filed herewith, and such further evidence or argument as may be presented at or before the hearing of this Motion.

1

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................**4**

**MEMORANDUM** ..........................................................................................**6**

**LEGAL STANDARD** ....................................................................................**7**

**ARGUMENT** .................................................................................................**8**

I.     Choice and Mr. O'Meara are not liable for "fee splitting" simply based
       on allegations that they happened to be paid at the same time as the
       Underwriter................................................................................................8

       A.   The conduct alleged is not fee splitting under any existing definition...8

       B.   Imposing liability for an entirely new interpretation of "fee splitting"
       without any possibility of prior notice is contrary to due process. ..............14

II.    Plaintiff has not alleged adequate facts to support its first and fifth
       claims..........................................................................................................17

       A.   A prima facie case for plaintiff's first and fifth claims must plausibly
       allege scienter. ...............................................................................................17

       B.   Plaintiff has not generally pleaded any allegations that show the
       necessary intent for these claims. ...................................................................19

       C.   The Complaint's allegations of deception regarding client fees also
       lack necessary factual support. .......................................................................23

**CONCLUSION** ...........................................................................................**27**

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................................. passim

*Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)................................. 25

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ................................................ 17, 18

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).................................... 14

*Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995) ................................. 14

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) ....................................................... 19

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)..................................................... 24

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48, 131 S. Ct. 1309, 1323, 179 L. Ed. 2d 398 (2011) ............................................................................................................ 17

*Sherwood & Roberts-Kennewick, Inc. v. St. Paul Fire & Marine Ins. Co.*, 322 F.2d 70, 75 (9th Cir. 1963) ........................................................................................................... 18, 19

*Sullivan v. Massachusetts Mutual Life Ins. Co.*, 611 F.2d 261, 264 (9th Cir.1979)....................... 27

*Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996).................................................... 14, 15, 16

**Statutes**

15 U.S.C. § 78o-4(a)(5) .................................................................................... 18, 21

15B(c)(1) of the Securities Exchange Act of 1934 ......................................................... 11

Exchange Act of 1934 Sections 10(b) ........................................................... 11, 13, 17

Sections 17(a)(2) and (3) of the Securities Act................................................... 12, 13

**Other Authorities**

MSRB Rule G-42 .......................................................................................... passim

Case No. 21-cv-01669-CAB-MSB

**Rules**

FED.R.CIV.P. 9(b) ....................................................................................... 25

Federal Rule of Civil Procedure 12(b)(6) ........................................ 7, 8, 9, 13

MSRB Rule G-17 ................................................................................. 18, 21

**Other**

https://www.merriam-webster.com/dictionary/fee%20splitting ................................. 10

**SEC Releases**

*In Re O'Brien Partners, Inc.*, Securities Act Release No. 7594, Release No. 1772, A. P. File No.

3-9761 (Oct. 27, 1998) .................................................................... 10, 12

*In the Matter of Arthurs Lestrange & Co., Inc. and Michael Bova,* SEC Release Nos. 33-7775,

34-42148 (Nov. 17, 1999) ................................................................. 11, 12

*In the Matter of John S. Reger and Business & Financial Advisors, Inc.* SEC Rel. No. 33-7973

(Apr. 23, 2001) ...................................................................................... 13

*In the Matter of William R. Hough & Co.,* SEC Release Nos. 33-7826, 34- 42632 (Apr. 6, 2000)

.............................................................................................................. 12

SEC Release No. 34-74860, File No. SR-MSRB-2015-03 (May 4, 2015) ................... 16

*SEC v. Mark S. Ferber*, Litigation Release No. 15193 (Dec. 19, 1996)....................... 11

Case No. 21-cv-01669-CAB-MSB

# MEMORANDUM

This is a matter of first impression that the SEC is openly using to test the limits of its ability to punish municipal advisors for conduct that it never clearly defined or prohibited. The case against Choice and Mr. O'Meara relies heavily on circular, interrelated, conclusory allegations that assert fraudulent conduct without support and which focus on reasonable business practices that are not clearly prohibited by the relevant law.

Numerous aspects of this case directly depend on the issue of "fee splitting" under MSRB Rule G-42. But, as discussed below, neither that rule nor any other direct legal authority defines that term. By Plaintiff's own description, this is the first-ever effort to enforce that rule. The SEC is using this lawsuit as an opportunity to test-drive the meaning of a rule that it never properly defined, at the expense of Choice, O'Meara and their business. *See* Litigation Release No. 25220, September 23, 2021, attached as Exhibit A.

There are two key flaws in the claims that Plaintiff has asserted in its Complaint: First, Plaintiff's articulated theory of "fee splitting" liability in its sixth claim is entirely contrary to precedent, it has no support in any case or MSRB rule, and its application in this case is an "enforcement-by-ambush" approach that is directly prohibited by the principles of due process. As a result, Plaintiff's fee-splitting claim must be dismissed. Second, Plaintiff has failed to adequately plead

factual details that are necessary to establish liability for its claims asserting manipulative, deceptive, or dishonest conduct, and has therefore failed to plausibly state those claims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a plaintiff's claims if the claims do not "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts generally accept factual allegations in a complaint as true and view them in the light most favorable to the plaintiff when considering Rule 12(b)(6) motions, this principle does not extend to either a plaintiff's recitals of the elements of its causes of action or a plaintiff's conclusory legal statements that are merely couched as factual allegations. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In order to survive a motion to dismiss, the facts detailed in the complaint must raise a right to relief "above the speculative level," and "possess enough heft to show that the pleader is entitled to relief," instead of merely stating assertions that might be consistent with liability. *Twombly*, 550 U.S. at 545 (internal brackets and quotation marks omitted). Although the plausibility standard "does not impose a probability requirement," *id.* at 556, it does require a pleading to show "more than a sheer

possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. That standard requires plaintiffs to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. A complaint that pleads facts "merely consistent with a defendant's liability" falls short of establishing "plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (emphasis added, internal quotation marks omitted); *Twombly*, 550 U.S. at 557. Any claim that fails to satisfy those requirements fails to meet the requirements of Rule 12(b)(6) and must be dismissed. *See id.*

## ARGUMENT

**I.     Choice and Mr. O'Meara are not liable for "fee splitting" simply based on allegations that they happened to be paid at the same time as the Underwriter.**

Plaintiff's sixth claim is subject to dismissal as a matter of law to the extent it alleges that defendants "made or participated in a fee-splitting arrangement with an underwriter on a municipal securities transaction as to which Choice or O'Meara provided or was providing advice."[1]

### A.     The conduct alleged is not fee splitting under any existing definition.

Plaintiff's sixth claim relies on MSRB Rule G-42. Though the Complaint does

---

[1] Plaintiff's sixth claim presents a grab bag of at least seven distinct alleged theories of liability, many of which duplicate theories asserted in elsewhere in Plaintiff's claims. Only the theory of liability based on "fee splitting" is at issue in this Motion.

not provide citations to any specific provision of that rule, it is clear from the language employed that it relies specifically on Rule G-42(e)(d), which prohibits a municipal advisor from making, or participating in, "any fee-splitting arrangement" with underwriters on any municipal securities transaction as to which it has provided or is providing advice. *See* Complaint at para. 98 [Doc. No. 1 at 20]; MSRB Rule G-42, included in the MSRB rule excerpts attached as Exhibit B.

The Complaint does not provide any definition of "fee-splitting arrangement," nor is that term defined in Rule G-42, any other Rule of the MSRB, any reported court decision, SEC guidance, or rulemaking history. *See id.*; *see generally*, Complaint. Instead, the Complaint attempts to use conclusory labels to carry its burden, referring to "fee splitting" or similar terms roughly 20 different times, without ever articulating what makes a fee arrangement a case of "impermissible fee splitting" or why. *See generally*, Complaint. In one or more of these instances, the Complaint simply punts by purporting to quote an unspecified statement referring to an "agreement of fee splits," without ever providing any detail whatsoever about who used that term, when, why, or whether it was legally accurate. *See id.* at paras 30, 41-42 [Doc. No. 1 at 8, 10-11]. As a matter of federal law, this type of pleading via unexplained labels and conclusory legal statements couched as factual allegations is insufficient to survive a motion to dismiss under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545, 555.

Notwithstanding the fact that the Complaint's content is entirely conclusory on the point of what constitutes prohibited "fee splitting" or why, the Complaint does at least identify the conduct that it asserts Defendants engaged in that it alleges constitutes "fee splitting." Namely, "[p]ursuant to the arrangement, the Underwriter would lower its underwriting fees by an amount equal to the amount that Choice would then receive as municipal advisor for anticipated bond transactions." Complaint at para. 30 [Doc. No. 1 at 8]. But even when taken as true, that alleged conduct does not violate the law on this matter.

Instead, appropriately, all of the existing precedent on securities liability arising out of fee splitting in other contexts tracks the dictionary definition that limits it to the practice of giving part of the fee charged a referred client or patient to a colleague who makes the referral, *see* Collins Dictionary, available at https://www.collinsdictionary.com/us/dictionary/english/fee-splitting; *see also* Merriam-Webster's Dictionary, last accessed December 13, 2021, available at https://www.merriam-webster.com/dictionary/fee%20splitting.

For example, in *In re O'Brien Partners, Inc.*, the SEC alleged that an investment adviser failed to disclose to state and municipal clients that it received "referral fees" from a finder, *In Re O'Brien Partners, Inc.*, Securities Act Release No. 7594, Release No. 1772, A. P. File No. 3-9761 (Oct. 27, 1998), attached as Exhibit C. In that case, the referral fees allegedly totaled $450,000 and represented

50-60% of finder commission, and the SEC found that that the undisclosed receipt of shared compensation from a broker violated fiduciary duties under the Investment Advisors Act. *Id.*

Likewise, *In the Matter of Mark S. Ferber* involved a municipal advisor who failed to disclose to state and municipal clients that over two years it had received payments totaling almost $6 million from a broker-dealer in exchange for recommendations that his clients select that broker-dealer as underwriter or provider of other financial services. *SEC v. Mark S. Ferber*, Litigation Release No. 15193 (Dec. 19, 1996), attached as Exhibit D. The SEC took the position that the advisor's undisclosed receipt of those payments from the broker-dealer constituted a conflict of interest and violated Sections 10(b) and 15B(c)(1) of the Securities Exchange Act of 1934, Rule 10b-5 thereunder, and rule G-17 of the Municipal Securities Rulemaking Board. *Id.*

*In the Matter of Arthurs Lestrange & Co., Inc. and Michael Bova*, involved the failure of a broker-dealer and municipal securities dealer to disclose the true nature of a fee splitting arrangement in which the advisor contributed its financial advisory fee of $210,000 to a pool of advisory and brokerage service compensation and received $1.5 million from the investment broker, and paid $500,000 to a finder, *In the Matter of Arthurs Lestrange & Co., Inc. and Michael Bova,* SEC Release Nos. 33-7775, 34-42148 (Nov. 17, 1999), attached as Exhibit E.

Specifically, a consultant to Arthurs Lestrange arranged for Arthurs Lestrange to split fees with a second broker-dealer. *Id.* While Bova disclosed that two different broker-dealers had agreed to "pool" and "apportion" their respective fees, he failed to disclose that Arthurs Lestrange would receive the largest portion of the pooled revenues notwithstanding that its own contribution would be much smaller than that of the other broker-dealer. *Id.* The letter also failed to disclose that Arthurs Lestrange had agreed to pay one-third of its share to the consultant's company for bringing a share of the escrow revenues to Arthurs Lestrange. *Id.* These facts were material because they would have called into question the integrity of the process by which Alex Brown was selected as escrow provider. *Id.* Again, the SEC found that the failure to fully disclose these arrangements to pay and receive payments from third parties constituted violations of Sections 17(a)(2) and (3) of the Securities Act. *Id.*

   *In the Matter of William R. Hough & Co.* involved two different instances of fee splitting by Hough, a registered broker-dealer. In one case, Hough received $35,000 for its services and $400,000 from the investment provider; in the other, Hough received $300,000 from a forward supply contract provider for "developing a forward supply assignment program." *In the Matter of William R. Hough & Co.,* SEC Release Nos. 33-7826, 34- 42632 (Apr. 6, 2000), attached as Exhibit F. The SEC found that Hough's undisclosed receipt of shared compensation and his

failure to obtain informed consent authorizing the arrangement violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5.

Finally, the fee splitting conduct underlying *In the Matter of John S. Reger and Business & Financial Advisors, Inc.* consisted of a municipal advisor failing to disclose to an issuer of municipal securities a payment arrangement under which the advisor received $104,000 from a particular broker-dealer in return for his selection of that broker-dealer to serve as the provider of U.S. Treasury securities in a Board advance refunding transaction. *In the Matter of John S. Reger and Business & Financial Advisors, Inc.* SEC Rel. No. 33-7973 (Apr. 23, 2001), attached as Exhibit G. The SEC found that the advisor's undisclosed arrangement to be paid by that broker-dealer had breached his fiduciary duty and violated Sections 17(a)(2) and 17(a)(3) of the Securities Act. *Id.*

In addition to presenting abusive conduct that involved undisclosed payments and breaches of fiduciary duty, all of these prior cases are consistent with the dictionary definition of "fee splitting," and none of them align with the novel interpretation of the term that Plaintiff relies on in the current case. Because the Complaint's use of the term "fee splitting" is entirely conclusory and there is no legal authority that supports Plaintiff's application of the term to the benign conduct in this case, the Complaint's sixth claim must be dismissed under Rule 12(b)(6) as it relates to fee splitting.

B.   <u>Imposing liability for an entirely new interpretation of "fee splitting"<br>without any possibility of prior notice is contrary to due process.</u>

Even if the Court were to ignore the conclusory nature of Plaintiff's allegations and the fact that the Complaint's interpretation of Rule G-42 lacks any legal basis, it violates basic principles of due process to impose liability on Choice and Mr. O'Meara under these circumstances. The SEC is using this case to test a theory of prohibited behavior for which it never promulgated clear rules, and of which no one—including Choice and Mr. O'Meara—had any notice that would have allowed them to avoid the conduct now at issue in this law suit.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *accord Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995) ("In the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability.").

In the same way, courts "cannot defer to the [SEC's] interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation." *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996). In *Upton*, the Second Circuit vacated a Commission order imposing sanctions against the chief financial officer of a broker-dealer for failure to supervise an employee who violated

Rule 15c3-3(e). *Id.* at 93. The court noted that the dealer's system of controls relating to Rule 15c3-3(e) "was standard procedure at several other brokerage firms, including two prior firms where" one of the respondents in the case was previously employed, and found that the Commission had not previously advised the market that that practice might be improper. *Id.* at 94, 95. As a result, the court found that the respondent "was not on reasonable notice that [the challenged] conduct might violate the Rule." *Id.* at 98 ("The Commission may not sanction Upton pursuant to a substantial change in its enforcement policy that was not reasonably communicated to the public.").

Plaintiff's attempt to assert an entirely novel theory of fee splitting liability in this case runs directly contrary to those principles of fair notice. It is beyond question that the MSRB rules contain no definition of fee splitting, and both the common dictionary definition and all existing precedent on fee splitting in other contexts stand for the proposition that fee splitting means using a portion of a fee received from a client to pay another. The Complaint alleges no such conduct.

But the problem here is even more egregious. During the rulemaking process for Rule G-42, multiple commenters provided examples of fee-splitting arrangements that they believed should not be prohibited, and the SEC, through MSRB, was directly asked to provide a clear definition of "fee splitting." But the SEC declined to address those requests, and chose to provide no definition whatsoever that would let

municipal advisors know what "fee splitting" is and how to avoid it. *See* SEC Release No. 34-74860, File No. SR-MSRB-2015-03 (May 4, 2015), pp.95-97, attached as Exhibit H; Exhibit B at MSRB Rule G-42. Only now, in this lawsuit, is Plaintiff trying to test the limits of what its own undefined rule can penalize, at Defendants' direct expense. *See* Exhibit A (noting that this is the SEC's first action to enforce its interpretation of Rule G-42's language on "fee splitting").

As a direct result of the SEC's choices, neither the Underwriter, nor Choice, nor O'Meara had any *ex ante* reason to believe the law might prohibit any arrangement—including those alleged in this case—where the fee is "split" only to the extent that a client directly pays more than one individual or company for work related to a shared transaction. This conduct would not consist of any existing understanding of prohibited fee splitting. As in *Upton*, where there is no reason that any market participant would possibly believe a certain type of action would be penalized, the SEC may not communicate a change in interpretation of that requirement for the first time in an enforcement action. Imposing any liability for fee-splitting based on conversations about fees where no money changed hands between Defendants and the Underwriter would directly violate Choice and Mr. O'Meara's due process rights because the SEC has never stated or even suggested that such conduct might run afoul of the rule. As a result, the fee-splitting component of Plaintiff's sixth claim must be dismissed.

**II.    Plaintiff has not alleged adequate facts to support its first and fifth claims.**

   A.    <u>A prima facie case for plaintiff's first and fifth claims must plausibly allege scienter.</u>

Under federal law, scienter is a required element of the Complaint's first and fifth claims, which involve deceptive or manipulative acts or practices, and deceptive, dishonest, or unfair practices, respectively. *See* Complaint at paras. 81-82, 95-96 [Doc. No. 1 at 17, 20].

Scienter only exists when the defendant in question had a "mental state embracing intent to deceive, manipulate, or defraud." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48, 131 S. Ct. 1309, 1323, 179 L. Ed. 2d 398 (2011).

In the securities context, the U.S. Supreme Court has recognized that scienter must be read into the necessary elements of causes of action based on certain described deceptive conduct. The key case on this point is *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976). In *Hochfelder*, the Supreme Court examined the text of Section 10(b) of the Securities Exchange Act of 1934—which prohibits the use or employment of "any manipulative or deceptive device or contrivance" in contravention of Commission rules—and held that the language used in section 10(b) demonstrates that it was intended to proscribe knowing or intentional misconduct. *Id.* at 197-99. As a result, mere negligence is insufficient and a cause of action under that section is subject to dismissal without specific facts that plausibly demonstrate

intentional wrongdoing. *Id.*; *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Specifically, *Hochfelder* described how creating statutory liability for "manipulative or deceptive" practices, including, for example, "devices" or "contrivances," "makes unmistakable a congressional intent to proscribe a type of conduct quite different from negligence" and therefore requires allegations showing knowing or intentional misconduct. *Hochfelder,* 425 U.S. at 197-199. While this issue has not previously been directly addressed in case law, it is clear that the reasoning in *Hochfelder* is directly on point as to the causes of action underlying both Plaintiff's first and fifth claims.

The first cause of action, under 15 U.S.C. § 78o-4(a)(5), applies when a "municipal advisor engages in any fraudulent, deceptive, or manipulative act or practice." The fifth cause of action, under MSRB Rule G-17, applies when a municipal advisor "engage[s] in any deceptive, dishonest, or unfair practice."

Both of these provisions use language that demonstrates that proof of intent is necessary to impose liability. MSRB Rule G-17 prohibits "dishonest" practices and 15 U.S.C. § 78o-4(a)(5) prohibits "fraudulent" practices; conduct that is either dishonest or fraudulent is willful by definition, and cannot exist without "intent to accomplish some wrongdoing." *Sherwood & Roberts-Kennewick, Inc. v. St. Paul Fire & Marine Ins. Co.*, 322 F.2d 70, 75 (9th Cir. 1963). Likewise, 15 U.S.C. § 78o-4(a)(5), the basis of Plaintiff's first claim, explicitly prohibits "manipulative"

practices. In analyzing when proof of scienter is required, *Hochfelder* specifically noted that "[u]se of the word 'manipulative' is especially significant" in the text because "[i]t is and was virtually a term of art when used in connection with securities markets" and "connotes intentional or willful conduct designed to deceive or defraud investors." *Id.* As a result, any alleged violation of either 15 U.S.C. § 78o-4(a)(5) or MSRB Rule G-17 requires proof of intent as an element, because the terms "fraudulent," "dishonest," and "manipulative" are limited to conduct that is intentional. *See id.*; *St. Paul Fire & Marine Ins. Co.*, 322 F.2d at 75; *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (under the principle of *noscitur a sociis*, courts must interpret all terms to be consistent with the limits of the accompanying terms in the text in order avoid an overly broad reading and uphold the intent of the provision as drafted).

B.   <u>Plaintiff has not generally pleaded any allegations that show the necessary intent for these claims.</u>

The Complaint does not allege that either Choice or Mr. O'Meara *intended* to deceive, manipulate, or defraud anyone. The bulk of the Complaint either is directed at the allegation that they failed to exercise due care or focuses on the alleged impact of their conduct, including that Choice or O'Meara should have done more to educate their clients about fee arrangements that Plaintiff alleges could have been problematic or the source of a potential conflict of interest. In this context, "manipulative," "dishonest," or "fraudulent" is ostensibly meant only to indicate conduct that has the

effect of causing an incorrect or incomplete understanding of the situation, as opposed to alleged conduct that was *intended* to mislead. In other words, instead of plausibly alleging how Defendants had the requisite state of mind to deceive, manipulate, or defraud anyone, the Complaint incorrectly treats these as strict liability offenses. The Complaint's theory of the case simply assumes that so long as a client received incomplete or incorrect information, Choice and O'Meara must be liable for fraudulent or deceptive practices.

Even taken in the light most favorable to Plaintiff, the Complaint's few factual allegations that could relate to scienter do not "possess enough heft to show that the pleader is entitled to relief," or establish any details about state of mind that go past the "speculative level." *See Twombly*, 550 U.S. at 545.

In fact, many of Plaintiff's allegations of "dishonest," "fraudulent," or "manipulative" conduct appear to stem directly not from any active conduct at all, but instead from the language in Choice's letters to its clients. In particular, the Complaint alleges that the letters contained boilerplate statements about the client schools' rights and Choice's responsibilities, including language about conflicts of interest and fiduciary duties. *See*, *e.g.*, Complaint at paras. 37, 39 [Doc. No. 1 at 9-10]. On that issue, Plaintiff employs circular reasoning to reach the conclusion that because Plaintiff believes or assumes Choice and Mr. O'Meara engaged in wrongdoing, any statements in those letters that can be read to deny wrongdoing

therefore misled the school clients and violated 15 U.S.C. § 78o-4(a)(5) and MSRB Rule G-17. *See id.* at paras. 37, 39, 53, 62-63, 70-72, 78 [Doc. No. 1 at 9-10, 13. 14. 16-17].

As a preliminary matter, many or all of those allegations of deceptive conduct depend *entirely* on legal conclusions couched as factual assertions on subjects such as fiduciary duty, conflicts of interest, and fee splitting. Plaintiff's assertions that Defendants engaged in illegal fee splitting, that Defendants did not "fully and fairly disclose . . . in writing all material actual or potential conflicts of interest," or that Defendants failed "act solely in [the client's] best interest" *are not facts. They are legal conclusions. See id.*; *see e.g., id.* at para. 37 [Doc. No. 1 at 9-10] ("These statements were misleading because Choice did, in fact, have actual and potential conflicts of interest and was not acting in School Client A's best interest"). As a result, to the extent Plaintiff's claims depend on allegations that those "facts" existed and therefore rendered Defendants' statements misleading, those claims must be dismissed as a matter of law. *See id.*; *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545, 555.

Plaintiff's theory about the dishonest nature of Defendants' letters fail to address much less allege what Choice and Mr. O'Meara in fact knew or intended. Absent facts that plausibly demonstrate that scienter existed, these claims fail. *See*

Complaint at paras. 37, 39, 53, 62-63, 70-72, 78 [Doc. No. 1 at 9-10, 13, 15-17], ; *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 545, 555.

For example, the Complaint alleges that Defendants acted dishonestly or fraudulently through a statement in its letters that "Choice Advisors does not share fees with any other parties and [sic] any provider of investments or services to the Client," based purely on the assumptions (1) that the mention of "shar[ing] fees" in fact referred to impermissible fee-splitting, and (2) that Defendants actually engaged in impermissible fee splitting. *See* Complaint at paras. 37-38, 78 [Doc. No. 1 at 9-10, 16-17]. The Complaint does not allege that Choice or Mr. O'Meara paid any party any portion of its fees. But the Complaint does not present any definition of what it means to "share fees." Nor does the Complaint allege that Choice or O'Meara actually believed that a fee arrangement where a client directly pays more than one individual or company out of work related to a shared transaction constituted "shar[ing] fees."[2] *See id.* at at paras. 37-38, 67 78 [Doc. No. 1 at 9-10.

---

[2] Plaintiff's theory of "fee splitting" as applied in this case is also incorrect as a matter of law, as addressed in the last section of the Motion.

16-17]. Absent factual allegations that plausibly demonstrate intent to deceive, this conduct is not dishonest, fraudulent, or manipulative, and the claims must fail.[3]

### C.   The Complaint's allegations of deception regarding client fees also lack necessary factual support.

Beyond general allegations, the only possible alleged conduct that could establish either Plaintiff's first or fifth claim deals with how the fees for School A were set up. As discussed below, Plaintiff has also failed to meet its burden in pleading the allegations on that point.[4]

---

[3] Moreover, as with other points in the Complaint, the allegation that any of the school clients were misled about the fee arrangements is contradicted elsewhere by Plaintiff's own allegations. It is beyond question based on the allegations in the Complaint that the schools knew that payments went to both Choice and the Underwriter *because the schools themselves directly made payments to both Choice and the Underwriter* based on contemporaneous agreements with both of them. *See*, *e.g.*, Complaint at paras. 45, 50 [Doc. No. 1 at 11, 12]. The Complaint also directly asserts that the schools learned of the fee arrangement at the point that "O'Meara and Permenter informed them that they were leaving the Underwriter to form Choice." *Id.* at para. 32 [Doc. No, 1 at 9].

[4] Defendants specifically note that while Plaintiff has pleaded its first and fifth claims as applying to all of the School Clients together, *compare* Complaint at paras. 83-87 (limiting the second claim to School A and School B) *with id.* at paras. 80-82, 94-06 (stating no such limitation), the Complaint's allegations regarding "manipulative" conduct on the Schools' fees only pertain to School A. The Complaint's allegations about School C and School D do not in any way allege that any Defendant affected the amount they paid in fees, either through deceptive conduct or otherwise. *Id.* at paras. 68-79. The Complaint's allegations about School B's are subject to the exact same faults raised in this section, *compare* Complaint at paras. 58-67 with *infra*, with the added problem that the Complaint

According to the Complaint, Mr. O'Meara was personally responsible for drafting the engagement letters with School A from both the Underwriter and Choice, which plainly set out all of the terms of their arrangement and how fees would be incurred. Complaint at paras. 41, 45, 50.

Plaintiff's allegation that Defendants acted deceptively turns entirely on the allegation that at some point in time, Mr. O'Meara in some way described the arrangement as a way for School Client A to keep the original terms intact, but that the terms to which the parties ultimately agreed potentially differed in the amount of the fee between 0.0% to 0.25%. *See* Complaint at para. 52; para. 45, 50 [Doc. No. 1 at 11-12]; May 8, 2018 BB&T Underwriter Engagement Letter with School A referenced in Complaint, attached as Exhibit I; May 8, 2018 Choice Engagement Letter with School A referenced in Complaint, attached as Exhibit J.[5]

---

admits that Defendants did not incur higher fees for School B but instead actually incurred lower fees for School B, *see* Complaint at paras. 58-67 (the original contemplated underwriting fee for School B was 2% of the par amount of the bonds but Defendants' actions resulted in School B paying a fee of 1.3% and Choice a fee of 0.45%, or 0.25% less than the original arrangement).

[5] Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint, but a court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Complaint refers to both of those

The Complaint does not allege specific statements from either Defendant on this point, nor does it specify how or when either Defendant made any "misrepresentation" that differed from the specific terms that the parties actually agreed to in writing. Without further actual detail that shows that either Defendant in fact intended to deceive that school, the mere existence of a potentially contradictory statement does not meet Plaintiff's burden at this phase. This is particularly true absent factual support that would be detailed enough to preclude the possibility that any possible contradiction might have been simply due to a mistake or a misunderstanding in the communication. *See Twombly*, 550 U.S. at 545 (a plaintiff must demonstrate facts that show its right to relief instead of merely stating assertions that might be consistent with liability); FED.R.CIV.P. 9(b) (any claim "alleging fraud or mistake," is subject to dismissal unless the claim has "state[d] with particularity the circumstances constituting fraud or mistake"); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (to comply with Rule 9(b), a complaint must state with particularity the circumstances constituting fraud or mistake, including "the who, what, when, where, and how of the misconduct charged" and the "plaintiff must set forth what is false or misleading about a statement, and why it is false."). Likewise,

---

documents and the content of those letters is central to its allegations in paragraphs 33-57.

the mere decision to describe conduct with the conclusory label that it is a "misrepresentation" or "half-truth" does not carry any weight without the factual support necessary to plausibly demonstrate that the conduct was actually deceptive. *See* Complaint at 52 [Doc. No. 1 at 12]; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, the presumption that factual details are taken to be true at this phase also does not rescue the Complaint from points on which its different factual allegations actually contradict each other or undermine Plaintiff's theories of liability. While Plaintiff alleges that Mr. O'Meara never informed School A of what the fee arrangement was because he "did not tell School Client A" about that arrangement, Complaint at paras. 49, 51 [Doc. No. 1 at 12], the Complaint clearly admits that Mr. O'Meara drafted and sent letters to School A from both the Underwriter and Choice that in fact communicated all of those details to School A, and it had that information directly in hand when it agreed to those fees, *id.* at paras. paras. 41, 45, 50 [Doc. No. at 10-11, 12]; Exhibit I; Exhibit J.

Even in the light most favorable to Plaintiff, there is no allegation in the Complaint that either Defendant ever hid that information or contradicted those letters after they were sent to School A. Instead, at most, the Complaint asserts that Mr. O'Meara had some prior conversation with School A in more general terms, before Mr. O'Meara himself sent letters that explicitly communicated the specific fee

terms that the parties then proceeded to enter an agreement on. *Compare* Complaint at paras. 49, 51 *with id.* at paras. 41, 45, 50; Exhibit I; Exhibit J; *c.f. Sullivan v. Massachusetts Mutual Life Ins. Co.*, 611 F.2d 261, 264 (9th Cir.1979) (as a general matter any written contract presumptively supersedes all prior and contemporaneous discussions concerning the same subject matter as the written contract). Under those circumstances, in addition to the points raised above, it is simply not plausible that the fee arrangements constitute a basis for Plaintiff's first or fifth claims regarding manipulative, deceptive, or dishonest practices, given that dearth of allegations that address Defendants' intent and the fact that the claims rely squarely on contradictory allegations that ultimately cannot avoid the fact that Defendants' communications with the relevant school did not actually hide or withhold any material information.

Because the Complaint has failed to establish any plausible prima facie case for Plaintiff's first or fifth claims, those claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's first, fifth, and sixth claims must be dismissed under Rule 12(b)(6) as described in this Motion.

Dated this 13th day of December, 2021.

*S/ Paul L. Vorndran*
Paul L. Vorndran *(Pro Hac Vice)*
Albert B. Sahlstrom *(Pro Hac Vice)*
JONES & KELLER, P.C.
1675 Broadway, 26th Floor
Denver, CO  80202
Phone:        303-573-1600
Email pvorndran@joneskeller.com
            asahlstrom@joneskeller.com

**PROOF OF SERVICE**

I hereby certify that on this 13th day of December, 2021, a I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as nonregistered participants.

s/ Emily Morse-Lee
Emily Morse-Lee

28                    Case No. 21-cv-01669-CAB-MSB