# EXHIBIT B



Municipal Securities Rulemaking Board

# Rule Book

Last Updated on October 1, 2018



The rules contained in this Rule Book were in effect as of the above date. The most up-to-date version of the MSRB's rules is posted on the MSRB's website at msrb.org.

©2018 Municipal Securities Rulemaking Board

EXHIBIT B
2

**Rule G-42**
Duties of Non-Solicitor Municipal Advisors

(a) *Standards of Conduct*.

(i) A municipal advisor to an obligated person client shall, in the conduct of all municipal advisory activities for that client, be subject to a duty of care.

(ii) A municipal advisor to a municipal entity client shall, in the conduct of all municipal advisory activities for that client, be subject to a fiduciary duty that includes a duty of loyalty and a duty of care.

(b) *Disclosure of Conflicts of Interest and Other Information*. A municipal advisor must, prior to or upon engaging in municipal advisory activities, provide to the municipal entity or obligated person client full and fair disclosure in writing of:

(i) all material conflicts of interest, including:

(A) any affiliate of the municipal advisor that provides any advice, service, or product to or on behalf of the client that is directly related to the municipal advisory activities to be performed by the disclosing municipal advisor;

(B) any payments made by the municipal advisor, directly or indirectly, to obtain or retain an engagement to perform municipal advisory activities for the client;

(C) any payments received by the municipal advisor from a third party to enlist the municipal advisor's recommendation to the client of its services, any municipal securities transaction or any municipal financial product;

(D) any fee-splitting arrangements involving the municipal advisor and any provider of investments or services to the client;

(E) any conflicts of interest arising from compensation for municipal advisory activities to be performed that is contingent on the size or closing of any transaction as to which the municipal advisor is providing advice; and

(F) any other actual or potential conflicts of interest, of which the municipal advisor is aware after reasonable inquiry, that could reasonably be anticipated to impair the municipal advisor's ability to provide advice to or on behalf of the client in accordance with the standards of conduct of section (a) of this rule, as applicable.

If a municipal advisor concludes that it has no known material conflicts of interest based on the exercise of reasonable diligence by the municipal advisor, the municipal advisor must provide a written statement to the client to that effect.

(ii) any legal or disciplinary event that is material to the client's evaluation of the municipal advisor or the integrity of its management or advisory personnel.

Information regarding legal or disciplinary events may be disclosed for purposes of this subsection by identification of the specific type of event and specific reference to the relevant portions of the municipal advisor's most recent Forms MA or MA-I filed with the Commission if the municipal advisor provides detailed information specifying where the client may electronically access such forms.

(c) *Documentation of Municipal Advisory Relationship*. A municipal advisor must evidence each of its municipal advisory relationships by a writing or writings created and delivered to the municipal entity or obligated person client prior to, upon or promptly after the establishment of the municipal advisory relationship. The writing(s) must be dated and include, at a minimum,

(i) the form and basis of direct or indirect compensation, if any, for the municipal advisory activities to be performed;

(ii) the information required to be disclosed by section (b) of this rule;

(iii) a description of the specific type of information regarding legal and disciplinary events requested by the Commission on Form MA and Form MA-I, which includes information about any criminal actions, regulatory actions, investigations, terminations, judgments, liens, civil judicial actions, customer complaints, arbitrations and civil litigation, and detailed information specifying where the client may electronically access the municipal advisor's most recent Form MA and each most recent Form MA-I filed with the Commission;

(iv) the date of the last material change or addition to the legal or disciplinary event disclosures on any Form MA or Form MA-I filed with the Commission by the municipal advisor and a brief explanation of the basis for the materiality of the change or addition;

(v) the scope of the municipal advisory activities to be performed and any limitations on the scope of the engagement;

(vi) the date, triggering event, or means for the termination of the municipal advisory relationship, or, if none, a statement that there is none; and

(vii) any terms relating to withdrawal from the municipal advisory relationship.

(d) *Recommendations and Review of Recommendations of Other Parties*. If a municipal advisor makes a recommendation of a municipal securities transaction or municipal financial product to a municipal entity or obligated person client, it must have a reasonable basis to believe that the recommended municipal securities transaction or municipal financial product is suitable for the client, based on the information obtained through the reasonable diligence of the municipal advisor. If the review of a recommendation of another party is requested by the municipal entity or obligated person client and within the scope of the engagement, the municipal advisor must determine, based on the information

obtained through the reasonable diligence of such municipal advisor, whether the municipal securities transaction or municipal financial product is or is not suitable for the client. In addition, the municipal advisor must inform the client of:

(i) the municipal advisor's evaluation of the material risks, potential benefits, structure, and other characteristics of the recommended municipal securities transaction or municipal financial product;

(ii) the basis upon which the municipal advisor reasonably believes that the recommended municipal securities transaction or municipal financial product is, or (as may be applicable in the case of a review of a recommendation) is not, suitable for the client; and

(iii) whether the municipal advisor has investigated or considered other reasonably feasible alternatives to the recommended municipal securities transaction or municipal financial product that might also or alternatively serve the client's objectives.

(e) *Specified Prohibitions*.

(i) A municipal advisor is prohibited from:

(A) receiving compensation that is excessive in relation to the municipal advisory activities actually performed;

(B) delivering an invoice for fees or expenses for municipal advisory activities that is materially inaccurate in its reflection of the activities actually performed or the personnel that actually performed those activities;

(C) making any representation or the submission of any information that the municipal advisor knows or should know is either materially false or materially misleading due to the omission of a material fact about the capacity, resources or knowledge of the municipal advisor, in response to requests for proposals or qualifications or in oral presentations to a client or prospective client, for the purpose of obtaining or retaining an engagement to perform municipal advisory activities;

(D) making, or participating in, any fee-splitting arrangement with underwriters on any municipal securities transaction as to which it has provided or is providing advice, and any undisclosed fee-splitting arrangements with providers of investments or services to a municipal entity or obligated person client of the municipal advisor; and

(E) making payments for the purpose of obtaining or retaining an engagement to perform municipal advisory activities other than: (1) payments to an affiliate of the municipal advisor for a direct or indirect communication with a municipal entity or obligated person on behalf of the municipal advisor where such communication is made for the purpose of obtaining or retaining an engagement to perform municipal advisory activities; (2) reasonable fees paid to another municipal advisor registered as such with the Commission and the Board for making such a communication as described in subparagraph (e)(i)(E)(1); and (3) payments that are permissible "normal business dealings" as described in Rule G-20.

(ii) Except as provided for in paragraph .14 of the Supplementary Material of this rule, a municipal advisor to a municipal entity client, and any affiliate of such municipal advisor, is prohibited from engaging with the municipal entity client in a principal transaction that is the same, or directly related to, the issue of municipal securities or municipal financial product as to which the municipal advisor is providing or has provided advice to the municipal entity client.

(f) *Definitions*.

(i) "Advice" shall, for purposes of this rule, have the same meaning as in Section 15B(e)(4)(A)(i) of the Act, 17 CFR 240.15Ba1-1(d)(1)(ii) and other rules and regulations thereunder.

(ii) "Affiliate of the municipal advisor" shall mean, for purposes of this rule, any person directly or indirectly controlling, controlled by, or under common control with such municipal advisor.

(iii) "Municipal advisor" shall, for purposes of this rule, have the same meaning as in Section 15B(e)(4) of the Act, 17 CFR 240.15Ba1-1(d)(1)-(4) and other rules and regulations thereunder; provided that it shall exclude a person that is otherwise a municipal advisor solely based on activities within the meaning of Section 15B(e)(4)(A)(ii) of the Act and rules and regulations thereunder or any solicitation of a municipal entity or obligated person within the meaning of Section 15B(e)(9) of the Act and rules and regulations thereunder.

(iv) "Municipal advisory activities" shall, for purposes of this rule, mean those activities that would cause a person to be a municipal advisor as defined in subsection (f)(iv) of this rule.

(v) A "municipal advisory relationship" shall, for purposes of this rule, be deemed to exist when a municipal advisor enters into an agreement to engage in municipal advisory activities for a municipal entity or obligated person. The municipal advisory relationship shall be deemed to have ended on the date which is the earlier of (i) the date on which the municipal advisory relationship has terminated pursuant to the terms of the documentation of the municipal advisory relationship required in section (c) of this rule or (ii) the date on which the municipal advisor withdraws from the municipal advisory relationship.

(vi) "Municipal entity" shall, for purposes of this rule, have the same meaning as in Section 15B(e)(8) of the Act, 17 CFR 240.15Ba1-1(g) and other rules and regulations thereunder.

(vii) "Obligated person" shall, for purposes of this rule, have the same meaning as in Section 15B(e)(10) of the Act, 17 CFR 240.15Ba1-1(k) and other rules and regulations thereunder.

(viii) "Official statement" shall, for purposes of this rule, have the same meaning as in Rule G-32(d)(vii).

(ix) "Principal transaction" shall mean, for purposes of this rule, when acting as principal for one's own account, a sale to or a purchase from the municipal entity client of any security or entrance into any derivative, guaranteed investment contract, or other similar financial product with the municipal entity client.

**Supplementary Material:**

**.01 Duty of Care.** Municipal advisors must exercise due care in performing their municipal advisory activities. The duty of care includes, but is not limited to, the obligations discussed in this paragraph .01. A municipal advisor must possess the degree of knowledge and expertise needed to provide the municipal entity or obligated person client with informed advice. A municipal advisor also must make a reasonable inquiry as to the facts that are relevant to a client's determination as to whether to proceed with a course of action or that form the basis for any advice provided to the client. A municipal advisor must undertake a reasonable investigation to determine that it is not basing any recommendation on materially inaccurate or incomplete information. Among other matters, a municipal advisor must have a reasonable basis for:

(a) any advice provided to or on behalf of a client;

(b) any representations made in a certificate that it signs that will be reasonably foreseeably relied upon by the client, any other party involved in the municipal securities transaction or municipal financial product, or investors in the municipal entity client's securities or securities secured by payments from an obligated person client; and

(c) any information provided to the client or other parties involved in the municipal securities transaction in connection with the preparation of an official statement for any issue of municipal securities as to which the municipal advisor is advising.

**.02 Duty of Loyalty.** Municipal advisors must fulfill a duty of loyalty in performing their municipal advisory activities for municipal entity clients. The duty of loyalty includes, but is not limited to, the obligations discussed in this paragraph .02. A municipal advisor must deal honestly and with the utmost good faith with a municipal entity client and act in the client's best interests without regard to the financial or other interests of the municipal advisor. A municipal advisor must not engage in municipal advisory activities for a municipal entity client if it cannot manage or mitigate its conflicts of interest in a manner that will permit it to act in the municipal entity's best interests.

**.03 Action Independent of or Contrary to Advice.** If a municipal entity or obligated person client of a municipal advisor elects a course of action that is independent of or contrary to advice provided by the municipal advisor, the municipal advisor is not required on that basis to disengage from the municipal advisory relationship.

**.04 Limitations on the Scope of the Engagement.** Nothing contained in this rule shall be construed to permit the municipal advisor to alter the standards of conduct or impose limitations on any of the duties prescribed herein. If requested or expressly consented to by the municipal entity or obligated person client, however, a municipal advisor may limit the scope of the municipal advisory activities to be performed to certain specified activities or services. If the municipal advisor engages in a course of conduct that is inconsistent with any such agreed upon limitations, it may result in negating the effectiveness of such limitations.

**.05 Conflicts of Interest.** Disclosures of conflicts of interest by a municipal advisor to its municipal entity or obligated person client must be sufficiently detailed to inform the client of the nature, implications and potential consequences of each conflict. Such disclosures also must include an explanation of how the municipal advisor addresses or intends to manage or mitigate each conflict.

**.06 Relationship Documentation.** During the term of the municipal advisory relationship, the writing(s) required by section (c) of this rule must be promptly amended or supplemented to reflect any material changes or additions, and the amended writing(s) or supplement must be promptly delivered to the client. This amendment and supplementation requirement applies to any changes and additions that are discovered, or should have been discovered, based on the exercise of reasonable diligence by the municipal advisor. The information described in subsection (c)(ii) of this rule is not required if the municipal advisor previously fully complied with the requirements of section (b) of this rule to disclose conflicts of interest and other information and subsection (c)(ii) would not require the disclosure of any materially different information than that previously disclosed to the client.

**.07 Inadvertent Advice.** A municipal advisor is not required to comply with sections (b) and (c) of this rule if the municipal advisor meets all of the following requirements. In the event that a municipal advisor inadvertently engages in municipal advisory activities for a municipal entity or obligated person and does not intend to continue the municipal advisory activities or enter into a municipal advisory relationship, the municipal advisor must, as promptly as possible after discovery of the provision of inadvertent advice, provide a document to such municipal entity or obligated person that is dated and includes:

(a) a disclaimer that the municipal advisor did not intend to provide advice and that, effective immediately, it has ceased engaging in municipal advisory activities with respect to that

municipal entity or obligated person in regard to all transactions and municipal financial products as to which advice was inadvertently provided;

(b)  a notification that such municipal entity or obligated person should be aware that the disclosure of material conflicts of interest and other information required by section (b) of this rule has not been provided;

(c)  an identification of all of the advice that was inadvertently provided, based on a reasonable investigation; and

(d)  a request that the municipal entity or obligated person acknowledge receipt of the document.

A municipal advisor utilizing this alternative must promptly conduct a review of its written supervisory and compliance policies and procedures to ensure they are reasonably designed to prevent the provision of inadvertent advice to municipal entities and obligated persons. The use of this alternative has no effect on the applicability of any provisions of this rule other than sections (b) and (c) or any other legal requirements applicable to municipal advisory activities.

**.08 Applicability of State or Other Laws and Rules.** Municipal advisors may be subject to fiduciary or other duties under state or other laws. Nothing contained in this rule shall be deemed to supersede any more restrictive provision of state or other laws applicable to municipal advisory activities. In addition, the specific prohibition in subsection (e)(ii) of this rule shall not apply to an acquisition as principal, either alone or as a participant in a syndicate or other similar account formed for the purpose of purchasing, directly or indirectly, from an issuer all or any portion of an issuance of municipal securities on the basis that the municipal advisor provided advice as to the issuance because that is a type of transaction that is addressed and prohibited in certain circumstances by Rule G-23.

**.09 Suitability.** A determination of whether a municipal securities transaction or municipal financial product is suitable must be based on numerous factors, as applicable to the particular type of client, including, but not limited to, the client's financial situation and needs, objectives, tax status, risk tolerance, liquidity needs, experience with municipal securities transactions or municipal financial products generally or of the type and complexity being recommended, financial capacity to withstand changes in market conditions during the term of the municipal financial product or the period that municipal securities to be issued in the municipal securities transaction are reasonably expected to be outstanding and any other material information known by the municipal advisor about the client and the municipal securities transaction or municipal financial product, after reasonable inquiry.

**.10 Know Your Client.** A municipal advisor must use reasonable diligence, in regard to the maintenance of the municipal advisory relationship, to know and retain the essential facts concerning the client and concerning the authority of each person acting on behalf of such client. The facts "essential" to "knowing a client" include those required to:

(a)  effectively service the municipal advisory relationship with the client;

(b)  act in accordance with any special directions from the client;

(c)  understand the authority of each person acting on behalf of the client; and

(d)  comply with applicable laws, regulations and rules.

**.11 Excessive Compensation.** Depending on the specific facts and circumstances of the engagement, a municipal advisor's compensation may be so disproportionate to the nature of the municipal advisory activities performed as to constitute an unfair practice in violation of Rule G-17. Among the factors relevant to whether a municipal advisor's compensation is disproportionate to the nature of the municipal advisory activities performed are the municipal advisor's expertise, the complexity of the municipal securities transaction or municipal financial product, whether the fee is contingent upon the closing of the municipal securities transaction or municipal financial product, the length of time spent on the engagement and whether the municipal advisor is paying any other relevant costs related to the municipal securities transaction or municipal financial product.

**.12 529 College Savings Plans, ABLE Programs and Other Municipal Fund Securities.** This rule applies equally to municipal advisors to sponsors or trustees of 529 college savings plans, ABLE programs (*i.e.*, a program established and maintained by a state, or an agency or instrumentality thereof, to implement the Stephen Beck, Jr., Achieving a Better Life Experience Act of 2014), and other municipal fund securities. All references in this rule to an "official statement" include the disclosure document for a 529 college savings plan or an ABLE program and the investment circular or information statement for a local government investment pool.

**.13 Principal Transactions - Other Similar Financial Products.** For purposes of subsection (f)(ix) of this rule, which defines the term "principal transaction," the phrase "other similar financial product" includes a bank loan, but only if it is in an aggregate principal amount of $1,000,000 or more and it is economically equivalent to the purchase of one or more municipal securities.

**.14 Principal Transactions - Exception for Transactions in Specified Fixed Income Securities.** Engaging in a principal transaction with a municipal entity client is not specifically prohibited under subsection (e)(ii) of this rule if:

(a)  the municipal advisor is a broker-dealer registered under Section 15 of the Act, and each account as to which the municipal advisor relies on this paragraph .14 is a brokerage account subject to the Act, and the rules thereunder, and the rules of the self-regulatory organization(s) of which it is a member, and is an account as to which the municipal advisor exercises no investment discretion (as defined in Section 3(a)(35) of the Act), except investment discretion granted by a municipal entity client on a temporary or limited basis;

(b) neither the municipal advisor, nor any affiliate of the municipal advisor, is providing or has provided advice to the municipal entity client as to an issue of municipal securities or a municipal financial product that is directly related to the principal transaction (other than advice as to another principal transaction under circumstances meeting all the requirements of this paragraph .14);

(c) the principal transaction is a sale to or a purchase from the municipal entity client of any U.S. Treasury security, agency debt security, or corporate debt security (as defined in paragraph .15 of the Supplementary Material) and does not involve municipal escrow investments (as defined in 17 CFR 240.15Ba1-1(h)); and

(d) the municipal advisor either: (1) discloses to the municipal entity client in writing before the completion of the transaction the capacity in which the municipal advisor is acting and obtains the consent of the municipal entity client to such transaction or (2) executes the transaction under circumstances meeting all of the following requirements:

(A) neither the municipal advisor nor any of its affiliates are the issuer of, or, at the time of the sale, an underwriter (as defined in 17 CFR 240.15c2-12(f)(8)) of, the security;

(B) the municipal entity client has executed a written, revocable consent prospectively authorizing the municipal advisor directly or indirectly to act as principal for its own account in selling any security to or purchasing any security from the municipal entity client, so long as such written consent is obtained after written disclosure to the municipal entity client explaining: the circumstances under which the municipal advisor directly or indirectly may engage in principal transactions; the nature and significance of conflicts with its municipal entity client's interests as a result of the transactions; and how the municipal advisor addresses those conflicts;

(C) the municipal advisor, prior to the execution of each principal transaction, informs the municipal entity client, orally or in writing, of the capacity in which it may act with respect to such transaction and obtains consent from the municipal entity client, orally or in writing, to act as principal for its own account with respect to such transaction;

(D) the municipal advisor sends a written confirmation at or before completion of each such transaction that includes, in addition to the information required by 17 CFR 240.10b-10 or Rule G-15, a conspicuous, plain English statement informing the municipal entity client that the municipal advisor disclosed to the client prior to the execution of the transaction that the municipal advisor may be acting in a principal capacity in connection with the transaction, the municipal entity client authorized the transaction, and the municipal advisor sold the security to, or bought the security from, the municipal entity client for its own account;

(E) the municipal advisor sends to the municipal entity client, no less frequently than annually, written disclosure containing a list of all transactions that were executed in the client's account in reliance upon subsection (d)(2) of this paragraph .14, and the date and price of such transactions; and

(F) each written disclosure required by subsection (d)(2) of this paragraph .14 includes a conspicuous, plain English statement that the municipal entity client may revoke the written consent referred to in paragraph (d)(2)(B) of this paragraph .14 without penalty at any time by written notice to the municipal advisor.

This paragraph .14 shall not be construed as relieving in any way a municipal advisor from acting in the best interest of its municipal entity clients, nor shall it relieve the municipal advisor from any obligation that may be imposed by other applicable provisions of the federal securities laws and state law.

**.15 Terms Relating to the Exception in Paragraph .14.** For purposes of paragraph .14 and this paragraph .15 of the Supplementary Material:

(a) "agency" means a U.S. executive agency as defined in 5 U.S.C. 105 that is authorized to issue debt directly or through a related entity, such as a government corporation, or to guarantee the repayment of principal and/or interest of a debt security issued by another entity. The term excludes the U.S. Department of the Treasury in the exercise of its authority to issue U.S. Treasury securities;

(b) "agency debt security" means a debt security (i) issued or guaranteed by an agency, or (ii) issued or guaranteed by a government-sponsored enterprise, including a securitized product that is issued by an agency or a government-sponsored enterprise, or, for which, the principal or interest (or both) is guaranteed by an agency or a government-sponsored enterprise;

(c) "corporate debt security" means a debt security that is U.S. dollar-denominated and issued by a U.S. or foreign private issuer and, if a "restricted security" as defined in 17 CFR 230.144(a)(3), sold pursuant to 17 CFR 230.144A, but does not include a money market instrument;

(d) "government-sponsored enterprise" has the same meaning as defined in 2 U.S.C. 622(8);

(e) "money market instrument" means a debt security that at issuance has a maturity of one calendar year or less, or, if a discount note issued by an agency or a government-sponsored enterprise, a maturity of one calendar year and one day or less;

(f) "securitized product" means a security collateralized by any type of financial asset, such as a loan, a lease, a mortgage, or a secured or unsecured receivable, and includes, but is not limited to, an asset-backed security, a synthetic asset-backed security, and any residual tranche or interest of any security specified above, which tranche or interest is considered a debt security; and

(g) "U.S. Treasury security" means a security issued by the U.S. Department of the Treasury to fund the operations of the federal government or to retire such outstanding securities.

**Rule G-42 Interpretations**

*Duties of Non-Solicitor Municipal Advisors in Conduit Financing Scenarios*

July 13, 2017

The MSRB is providing interpretive guidance to address the applicability of Rule G-42, which establishes core standards of conduct for municipal advisors[1] that engage in municipal advisory activities,[2] other than municipal advisory solicitation activities (for purposes of this guidance and Rule G-42, "municipal advisors"), in the area of conduit financing. Using various scenarios, the guidance discusses a municipal advisor's relationship(s) with, and duties and obligations owed to, a municipal entity issuer, an obligated person that is a conduit borrower,[3] or both, in connection with the issuance of municipal securities for the conduit borrower. For purposes of this guidance, the MSRB assumes that the conduit borrower is not a municipal entity, as defined in Section 15B(e)(8) of the Exchange Act, except in the final section of the guidance entitled, "When a Conduit Borrower is also a Municipal Entity."

A few broad principles should be noted. First, institutions that are often conduit borrowers, such as large universities, may choose to issue debt securities directly without the involvement of a municipal entity issuer. The exemption from registration under the Securities Act of 1933 ("Securities Act")[4] may be based on Section 3(a)(4)[5] or Regulation D under the Securities Act,[6] rather than on Section 3(a)(2).[7] In such cases, there may be no municipal security, and Rule G-42 would not apply. In cases where there is a private placement "tail" (*i.e.*, a non-municipal security) side-by-side with the issuance of a tax-exempt municipal security, the advice and the activities a municipal advisor engages in regarding the tax-exempt security, including any conduct or communication to fulfill the municipal advisor's duties and obligations under Rule G-42, may have an impact or consequences for the municipal advisor with respect to its negotiations or other activities related to the non-municipal security (*e.g.*, the disclosure to the client of a material conflict of interest as required under Rule G-42(b)).

Second, the scenarios described below may involve advice given to both the municipal entity issuer and the conduit borrower. Rule G-42 provides that a fiduciary duty is owed only to a municipal entity, and a duty of care is owed to both the municipal entity and the conduit borrower. If an issue arises as to an activity that involves only the duty of care, such as inquiry as to the facts that provide the basis for advice provided to the client, the duty owed may be the same to both the municipal entity and the conduit borrower. Other issues, however, may involve the duty of loyalty owed the municipal entity as part of the municipal advisor's fiduciary duty, and thus the municipal advisor's obligation to the issuer may be higher (or different) than the duty owed the conduit borrower.

Initially, the MSRB provides interpretive guidance regarding the applicability of Rule G-42 when an issuer hires a municipal advisor to provide advice directly to a conduit borrower ("First Scenario"). The MSRB then considers whether an issuer may retain a municipal advisor (either for a specific transaction, or on a long-term basis), and then provide advice that the issuer obtains from the municipal advisor, in connection with a specific issuance of municipal securities, indirectly through the issuer, to the conduit borrower in connection with the issuance ("Second Scenario"). In a third scenario, the MSRB considers whether a conduit borrower may retain a municipal advisor that, as a practical matter, will also provide advice to an issuer on which the issuer will rely, in cases where the issuer chooses not to retain a separate municipal advisor, and, in such circumstances, whether the municipal advisor must provide the issuer the disclosures set forth in Rule G-42 ("Third Scenario"). The MSRB also provides interpretive guidance regarding the application of Rule G-42 to an issuer and a conduit borrower when the issuer and the conduit borrower retain the same municipal advisor to provide advice regarding an issuance ("Fourth Scenario"). Finally, in a fifth scenario ("Fifth Scenario"), the MSRB interprets the applicability of Rule G-42 to a scenario involving two natural persons, A and B, who are employees or otherwise associated persons of a registered municipal advisor, where A is retained by the issuer to provide municipal advisory services to the issuer, and B is retained by the conduit borrower to provide municipal advisory services to the conduit borrower.

**Section 1: First Scenario**

In the First Scenario, the MSRB considers the applicability of Rule G-42, when, in connection with a specific issuance of municipal securities, an issuer hires a municipal advisor to provide advice directly to a conduit borrower. (For purposes of the First Scenario, the MSRB assumes that the municipal advisor does not provide municipal advisory services to the issuer. Instead, consistent with the issuer's intent, the municipal advisor is retained for, and in fact, provides municipal advisory services solely to or on behalf of the conduit borrower.)

Under Rule G-42, a municipal advisor may provide municipal advisory services directly to a conduit borrower, in connection with an issuance of municipal securities by an issuer, if the municipal advisor is retained and compensated by the issuer. Whether a person (in this case, the municipal advisor retained by the issuer) is a municipal advisor to the issuer, another person (in this case, the conduit borrower), or both and therefore is subject to Rule G-42, is activity-based and turns on whether the person is providing advice or otherwise engaging in municipal advisory activities for or on behalf of the recipient. Although the First Scenario focuses on the payment of compensation by the issuer, the existence or non-existence of compensation is not a factor in determining whether the

municipal advisor is a municipal advisor to the issuer or to the conduit borrower.[8] In addition, the fact that, as to the conduit borrower, the municipal advisor is paid compensation by a third party is also not a factor in determining if the municipal advisor is a municipal advisor to the conduit borrower.

In the First Scenario, the municipal advisor engages in municipal advisory activities solely for or on behalf of the conduit borrower, and is subject to the requirements of Rule G-42. The municipal advisor is required to comply with all the provisions of Rule G-42 as to the conduit borrower,[9] and the rule applies in all respects to the municipal advisor in its relationship with the conduit borrower, except provisions applicable solely to a municipal entity client.

The threshold question regarding the application of Rule G-42 to the municipal advisor in its relationship to the issuer is whether the Securities and Exchange Commission (SEC) would interpret the facts and circumstances of the First Scenario — where the issuer does not receive the municipal advisory services, and the services are in fact provided solely to and on behalf of the conduit borrower – as the municipal advisor engaging (as a legal matter) in municipal advisory activities also to or on behalf of the issuer.

The Exchange Act definition of municipal advisor includes a person that "[p]rovides advice[10] to *or on behalf of* [emphasis added] a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities, including advice with respect to the structure, timing, terms, and other similar matters concerning such financial products or issues."[11] The SEC has stated that the determination of "whether a person provides advice to or on behalf of a municipal entity or an obligated person regarding municipal financial products or the issuance of municipal securities depends on all the relevant facts and circumstances."[12] The meaning of the phrase "on behalf of" in the context of the First Scenario and more broadly, whether a person is engaged in municipal advisory activities for or on behalf of another person and is a municipal advisor to such person are interpretive issues that are solely within the jurisdiction of the SEC. Requests for interpretation regarding such issues should be directed to the SEC's Office of Municipal Securities.

If, in the First Scenario, the activities of the municipal advisor with the issuer are not interpreted by the SEC to mean that the municipal advisor is also a municipal advisor to the issuer, then the municipal advisor would not be required to comply with Rule G-42 with respect to the issuer. For example, the municipal advisor would not be required by Rule G-42 to provide disclosures of conflicts of interest, if any existed, to the issuer.

Although compensation is not a factor in determining whether a person is a municipal advisor to a particular party (except as to a solicitor municipal advisor), the MSRB believes that, in the First Scenario, the compensation paid by the issuer to the municipal advisor for services for a conduit borrower may present a material conflict of interest, requiring the municipal advisor to make full and fair disclosure of such conflict in writing to the conduit borrower. Rule G-42 requires a municipal advisor to disclose all material conflicts of interest under Rule G-42(b)(i). (Such requirements are also incorporated in Rule G-42(c)). The requirement is not limited to actual material conflicts of interest. As provided in Rule G-42(b)(i)(F), for example, the municipal advisor must disclose potential material conflicts of interest that the municipal advisor becomes aware of after reasonable inquiry, that could reasonably be anticipated to impair the municipal advisor's ability to provide advice to or on behalf of the client in accordance with the applicable standards of conduct under the Rule – the duty of care, and if applicable, the duty of loyalty. In this scenario, the client is the conduit borrower and the municipal advisor owes its client the duty of care as provided in Rule G 42(a)(i) and SM .01.[13] Even if the compensation paid by the issuer to the municipal advisor is not viewed as an actual material conflict of interest by the municipal advisor, the municipal advisor must carefully consider if such payments give rise to a potential material conflict of interest. In the MSRB's view, the payments from the issuer to the municipal advisor may create a relationship between the municipal advisor and the issuer, that even if not a municipal advisor-client relationship, generally would give rise to a potential material conflict of interest that could reasonably be anticipated to impair the municipal advisor's ability to provide advice to or on behalf of the conduit borrower in accordance with the standards of Rule G-42(a). Before making any such disclosures to the conduit borrower, the municipal advisor should consider the guidance set forth in SM .05. Under SM .05, when a municipal advisor is required to make disclosures of material conflicts of interest, including those required under Rule G-42(b)(i)(F), the municipal advisor's disclosures must be sufficiently detailed to inform the conduit borrower of the nature, implications and potential consequences of each conflict, and must also include an explanation of how the municipal advisor addresses or intends to manage or mitigate each conflict.

Finally, the relationship between the issuer and the municipal advisor, however characterized or limited, may create other compliance concerns under Rule G-42. For example, in some cases, the issuer, although not the client, may wish to provide policy direction or instructions to the municipal advisor regarding the issuance of the municipal securities. If the issuer communicates, explicitly or implicitly, an instruction or direction which the municipal advisor follows and which inhibited or limited the municipal advisor's ability to fulfill its duties and obligations to the conduit borrower client under Rule G-42, the municipal advisor would violate the rule.

**Section 2: Second Scenario**

The MSRB has been asked to provide guidance regarding a scenario where a municipal advisor is engaged in municipal advisory activities as directed by an issuer and for such issuer, pursuant to an explicit arrangement or agreement, and the municipal advisor "indirectly" also provides advice to a conduit

borrower, because the issuer provides to the conduit borrower the advice the issuer receives from the municipal advisor. For purposes of this Second Scenario, the MSRB assumes that the municipal advisor is aware of the flow of information from the issuer to the conduit borrower.

To assess whether the municipal advisor owes duties to the conduit borrower when the municipal advisor provides advice to the issuer that then flows through to the conduit borrower, again, a threshold question must be answered: Is the municipal advisor also engaged in municipal advisory activities for or on behalf of the conduit borrower because the conduit borrower is receiving, through the issuer, some or all of the advice that was provided by the municipal advisor to the issuer, establishing a municipal advisory relationship between the municipal advisor and the conduit borrower?

As set forth above, the SEC has stated that the determination of "whether a person provides advice to or on behalf of a municipal entity or an obligated person regarding municipal financial products or the issuance of municipal securities depends on all the relevant facts and circumstances,"[14] and whether a person is engaged in municipal advisory activities for or on behalf of another person and is a municipal advisor to such person are interpretive issues that are solely within the jurisdiction of the SEC.[15]

If, in the Second Scenario, the transfer of advice from the issuer to the conduit borrower is interpreted by the SEC to mean that the municipal advisor is engaged in municipal advisory activities for or on behalf of the conduit borrower, the municipal advisor must comply with the requirements of Rule G-42 with respect to the issuer and the conduit borrower. This dual representation may raise several compliance issues.

Rule G-42 distinguishes the duties and obligations that a municipal advisor owes to an issuer client (*i.e.*, a municipal entity) from those owed to a conduit borrower client in two provisions. First, in the conduct of all municipal advisory activities for and on behalf of an issuer client, a municipal advisor is subject to a fiduciary duty as provided in Rule G-42(a)(ii). The fiduciary duty is more specifically described as a requirement to act in accordance with a duty of loyalty[16] and a duty of care,[17] as described in, respectively, SM .02 and SM .01. In contrast and as discussed above, when the municipal advisor's client is a conduit borrower, the municipal advisor owes a duty of care to the client as provided in Rule G-42(a)(i) and SM .01, but not a duty of loyalty. Second, in connection with a municipal advisor's municipal advisory activities for and on behalf of an issuer client, a municipal advisor, and any affiliate of the municipal advisor, is prohibited from engaging in certain principal transactions with the issuer, as provided in Rule G-42(e)(ii).[18] This specific prohibition does not apply to a municipal advisor when its client is a conduit borrower. However, all other provisions and protections in Rule G-42 apply in the same manner to a municipal advisor whether its client is an issuer (*i.e.*, a municipal entity) or a conduit borrower. For example, municipal advisors must provide the same timely disclosures of material conflicts of interest and material legal and disciplinary events in the earliest stages of their dealings with their conduit borrower clients as they provide to their municipal entity clients (and supplement such disclosures as necessary during the relationship). Similarly, municipal advisors have the same obligations to an issuer client and a conduit borrower to provide written documentation of the municipal advisory relationship (and supplement such documentation as necessary during the relationship). Also, if a municipal advisor makes a recommendation of a municipal securities transaction to either type of client, the municipal advisor must have a reasonable basis to believe that the recommended municipal securities transaction is suitable for the client.

The MSRB believes that a municipal advisor's dual representation of an issuer and a conduit borrower with respect to the same issuance raises at least two types of compliance issues and concerns. First, the differing standards and other distinctions that Rule G-42 makes between issuer clients and conduit borrower clients will require a municipal advisor to consider whether, in every aspect of its conduct and representation, the municipal advisor acts in compliance with the more stringent standard applicable to its issuer client, and also fulfills its duties and obligations to its conduit borrower client. Moreover, under Rule G-42, compliance concerns and issues may require greater diligence to identify and address, because although certain duties and obligations are specified in Rule G-42(a)(i) and (ii) and SM. 01 and SM .02, generally, all of the specific duties or obligations that fall under the broad umbrella of the fiduciary duty cannot be specifically enumerated. Among other things, the MSRB cannot anticipate and identify all the situations that may arise in a particular offering, and, as a result, the rule cannot provide explicit instruction or guidance to a municipal advisor to an issuer, regarding what acts must be taken (or avoided) or what must be communicated (or not communicated) to an issuer to comply fully with the municipal advisor's fiduciary duty. Similarly, all duties and obligations that a municipal advisor owes to a conduit borrower under the duty of care in a particular offering also cannot be specifically enumerated for the same reasons.

Further, when compliance issues or concerns arise, whether the duty owed is a fiduciary duty (a duty of loyalty and a duty of care) or a duty of care, under Rule G-42 and SM .04, the standards of conduct applicable to the municipal advisor and, except as provided in SM .04, the duties and obligations owed to the municipal advisor's client(s), cannot be eliminated, diminished or modified by disclosure, mutual agreement or otherwise. SM .04 makes clear that nothing in the rule shall be construed to permit a municipal advisor to alter the standards of conduct or impose limitations on any of the duties prescribed in Rule G-42. For example, in various requests for guidance, the MSRB was asked, regarding dual representations, if the MSRB could confirm a municipal advisor engaged in dual representations could continue its representation of both clients if full and fair disclosures of any conflicts of interest or other issues were made to both clients. Gener-

ally, disclosure alone would not be sufficient for a municipal advisor to ensure, in all facts and circumstances, that a municipal advisor would be in compliance with all the duties and obligations owed to one or both clients, including, as to a fiduciary, the obligation of a municipal advisor not to "engage in municipal advisory activities for a municipal entity client if it cannot manage or mitigate its conflicts of interest in a manner that will permit it to act in the municipal entity's best interests."[19] However, certain limitations may be placed on the scope of a municipal advisory relationship with a client, and the ability to do so is not limited to dual representation scenarios. Under SM .04, if requested or expressly consented to by a client, a municipal advisor may limit the scope of the municipal advisory activities to be performed to certain specified activities or services. (The effectiveness of any such specified limitation of the scope of municipal advisory activities may be negated, however, if the municipal advisor then engages in a course of conduct that is inconsistent with the specified limitations.)

In the Second Scenario and any other scenario involving a dual representation, before entering into the dual representation, a municipal advisor must determine if it is possible to meet its duties and obligations to both clients under Rule G-42. The municipal advisor must determine it can comply with Rule G-42 when the duties and obligations owed to one client, the issuer, are more stringent and more difficult to fulfill, than those duties and obligations that the municipal advisor owes to the second client, the conduit borrower. Among other things, the duty of loyalty owed to the issuer requires a municipal advisor to act in the best interests of the issuer client without regard to the financial or other interests of the municipal advisor. The municipal advisor must consider whether it will be able to act consistently with this standard during the entire engagement while also providing municipal advisory services to the conduit borrower client, without putting its interests or the interests of the conduit borrower, before or above those of the issuer client, including not providing any advantages or benefits to itself or any other client to the loss or detriment of the issuer, including any financial loss or lost opportunity.

In addition, as discussed above, in all municipal advisory relationships, a municipal advisor must identify and disclose to its client material conflicts of interest, after reasonable inquiry, and such disclosures must be sufficiently detailed to inform the client of the nature, implications and potential consequences of each conflict. In the MSRB's view, conflicts of interest are, in most cases, inherent in a dual representation, although they may not always be material. In a dual representation, the MSRB believes that such conflicts of interest should be identified prior to or upon engaging in municipal advisory activities with each client. Further, in the MSRB's view, the potential for an identified, but non-material conflict to become a material conflict of interest during the dual representation is great enough that the municipal advisor will have an obligation to make an initial disclosure pursuant to Rule G-42(b)(i)(F), of the facts and circumstances of the dual representation, how such dual representation is a potential material conflict of interest and the risk that such conflict could reasonably be anticipated to impair the municipal advisor's ability to dually represent both clients in accordance with the standards of conduct under Rule G-42(a).[20] Further, for each client, the municipal advisor must include an explanation of how the municipal advisor addresses or intends to manage or mitigate each conflict, as provided in SM .05.

However, because the municipal advisor owes a fiduciary duty to one client but not the other, if any material conflict of interest is identified that the municipal advisor cannot manage or mitigate in a manner that will permit the municipal advisor to act in the issuer's best interests, the municipal advisor must not engage in, or must cease engaging in, the municipal advisory activities for the issuer. Practically, this would require the municipal advisor to terminate the relationship with the issuer, or act to eliminate the material conflict of interest. For example, if such conflicts derive from the municipal advisor's relationship with the conduit borrower, as an alternative to terminating its relationship with the issuer, the municipal advisor may be able to eliminate such material conflicts by amending or terminating its relationship with the conduit borrower. The MSRB notes that, in either scenario, the municipal advisor's elimination of its conflicts of interest, by terminating its relationship with the issuer, or by amending or terminating its municipal advisory relationship with the conduit borrower, may create both legal and related business issues. If termination of the municipal advisory relationship with the issuer or the conduit borrower is required, among other things, the termination may have a detrimental impact on the schedule or costs of completing the issuance, or impair the terminated client's ability to obtain informed advice. For these reasons, municipal advisors are cautioned to determine before or upon beginning a dual representation how either municipal advisory relationship would be modified or terminated if the municipal advisor is no longer able to comply with its Rule G-42 obligations in a dual representation. Among other things, a municipal advisor may wish to consider if, prior to finalizing the initial documentation of the municipal advisory relationship as required in Rule G-42(c), the municipal advisor should negotiate the specific terms and conditions that would apply to a future termination of a municipal advisory relationship with either of the clients. As required by Rule G-42(c), if specific terms regarding termination are agreed upon, such terms must be incorporated in the writing(s) that document the municipal advisory relationship.[21]

An example of a difficult circumstance for the municipal advisor to resolve arises when, for example, a major university or hospital chain is engaged in multiple conduit financings in different jurisdictions around the country. The conduit borrower may have developed a certain type of financing to fit within its own broader financing plan, such as consistently structured variable rate securities. One state education authority, which is approached by the university conduit borrower,

may, however, have a strong policy against the issuance of variable rate debt. The municipal advisor should bring the conflict to both parties at the earliest possible stage in the financing and make a determination whether it can advise both parties and fulfill its obligations under Rule G-42.

The MSRB also cautions municipal advisors that neither the facts and circumstances characterizing an issuance involving an issuer and a conduit borrower, nor the duties and obligations under Rule G-42 as applied to a relationship, are static or fixed. The requirements of Rule G-42 apply at any time during which municipal advisory activities are engaged in for or on behalf of an issuer or a conduit borrower, and with equal rigor throughout the representation. For example, although the standards of conduct do not change, as facts and circumstances change, a municipal advisor must assess if, under such changed circumstances, there are specific acts, duties or obligations that are not enumerated under Rule G-42 that must be performed or attended to arising from the broad duty of care and, if applicable, duty of loyalty.[22] Rule G-42 also incorporates protections for municipal advisory clients in certain key provisions, which are based on the recognition that key facts and circumstances may change (*i.e.*, the continuing obligation to provide promptly to a client amended or supplemental information in writing, regarding any changes and additions in the relationship documentation, such as amendments or supplements needed regarding the material conflicts of interest disclosures, or the disclosures regarding certain legal and disciplinary events).

Changes in the facts and circumstances regarding the municipal securities issuance, or in the municipal advisory relationships with an issuer, a conduit borrower or both may require the municipal advisor to review if such changes may affect its ability to continue the dual representation and fully comply with Rule G-42. Even if an issuer, a conduit borrower and a municipal advisor believe at the beginning of the dual representation that the issuer and conduit borrower will be in agreement on all major issues that may arise during the course of the issuance, the interests and goals of each client may diverge later. Either the issuer, the conduit borrower, or both, may develop substantially divergent views on issues material to the issuance. Municipal advisors considering dual representation should assess initially the extent to which the interests and goals of the issuer and the conduit borrower are the same or substantially similar and make reassessments periodically thereafter.

Although challenging, in certain circumstances, the MSRB believes that it may be possible for a municipal advisor to provide municipal advisory services to an issuer and, in the manner described in the Second Scenario, indirectly, to engage in municipal advisory activities for or on behalf of a conduit borrower and remain in compliance with Rule G-42. Specifically, the circumstances where dual representation as described in the Second Scenario may be most feasible are those where the interests of the issuer and the conduit borrower are aligned. This may occur when the issuer is created to finance a specific project for the benefit of a metropolitan area, or in instances where the issuer applies a policy-neutral or hands-off approach to proposed projects, provided that such projects and the related financings comply with fundamental legal requirements for issuance. In such circumstances where an issuer and a conduit borrower have a complete or substantially complete convergence of interests and goals, or where the issuer's concerns are somewhat limited and related for the most part to determining that an issuance will fully comply with the applicable legal and regulatory requirements, it may be possible for the municipal advisor to deal honestly and with the utmost good faith and act in the best interests of the issuer without regard to the financial or other interests of the municipal advisor (including the municipal advisor's financial or other interest arising from its relationship with the conduit borrower) as required under the duty of loyalty, and also meet its obligations to both clients under the duty of care. It also may be possible for the municipal advisor, which by the very status of its dual representation creates a potential material conflict of interest that must be disclosed in the initial disclosures made pursuant to Rule G-42(b), to manage or mitigate this and any other of "its conflicts of interest in a manner that will permit it to act in the municipal entity's best interests," as required under SM .02.

Conversely, where there is not a substantially complete convergence of interests and goals of the issuer and the conduit borrower, or when the shared interests and goals of the issuer and the conduit borrower at the beginning of the issuance process diverge during the course of the issuance, it may not be possible for a municipal advisor to fulfill its duties of loyalty and care to its municipal entity client, and also provide, under the duty of care, the appropriate expert professional advice to the conduit borrower and otherwise fulfill its obligations to the conduit borrower that arise under the duty of care. Although dual representation is possible, for every action taken during an issuance, it is incumbent upon a municipal advisor to assess and determine, as to each client, if such actions comply with the standards of conduct and other requirements under Rule G-42.

Given the broad scope of the duty of care and the broader and more strict obligations arising in a fiduciary relationship, the MSRB concludes that it may be possible for a municipal advisor in the Second Scenario to engage in dual representations for or on behalf of both an issuer and a conduit borrower, but the municipal advisor will face a number of challenges in such situations. Moreover, the challenges to fully and completely comply with its obligations to each client will be heightened in lengthier and more complex engagements.

### Section 3: Third, Fourth and Fifth Scenarios

The Third, Fourth and Fifth Scenarios raise the same compliance issues and concerns under Rule G-42 as discussed in the First and Second Scenarios. In the Third Scenario, the municipal advisor, an issuer and a conduit borrower expressly recognize that the municipal advisor is retained by and pro-

vides municipal advisory services for the conduit borrower and, also, as a practical matter, provides advice to the issuer, on which the issuer relies.[23] Although in the Third Scenario, the conduit borrower, rather than the issuer compensates the municipal advisor, all the compliance and regulatory issues arising regarding Rule G-42 are the same as those discussed above regarding the Second Scenario.

In relation to the Third Scenario, municipal advisors also have requested guidance regarding the municipal advisor's responsibilities to the issuer when the municipal advisor is retained and compensated by the conduit borrower. For example, does the municipal advisor have a fiduciary responsibility to the issuer to whom advice is being provided, and is the municipal advisor required to provide disclosures of conflicts of interest to the issuer? If the provision of such advice to the issuer means, under SEC rules, that the provider is a municipal advisor to the issuer, then the municipal advisor would be a fiduciary to the issuer and subject to all the duties and obligations under Rule G-42. Thus, the municipal advisor would be required, among other things, to comply with the requirements to make disclosures of material conflicts of interest as provided in Rule G-42(b), and to provide such conflicts of interest disclosures as part of the relationship documentation as provided in Rule G-42(c).

The Fourth Scenario is another scenario in which a municipal advisor is engaged in a dual representation of an issuer and a conduit borrower. Rule G-42 would apply in the Fourth Scenario in the same manner as it applies in the Second Scenario.

The Fifth Scenario is also an example of dual representation by one municipal advisor of an issuer and a conduit borrower regarding the same issuance of municipal securities and, thus, raises the same issues regarding the municipal advisor's compliance with Rule G-42 that are discussed for the Second Scenario. The duties and obligations of Rule G-42 run not only from a municipal advisor firm's associated persons but also from the municipal advisor firm to the issuer and the conduit borrower. Although, in the Fifth Scenario, one employee is designated to act on behalf of the issuer and a second is designated to act on behalf of the conduit borrower, the employees are agents of their employer, a single municipal advisor firm. In the MSRB's view, therefore, how Rule G-42 applies in the Fifth Scenario does not differ in any material respect from the Second, Third and Fourth Scenarios. In a dual representation, and, in particular, a dual representation purposefully established from the beginning of the issuance, a municipal advisor firm having the capacity to do so is likely to rely on the services of more than one of its associated persons, whether structured to work in coordination as one team, or separately.

**Section 4: When a Conduit Borrower is also a Municipal Entity**

In the discussion above regarding the five scenarios, the MSRB assumes that, in dual representations, the issuer client is a municipal entity, and the second client, the conduit borrower, is not. As discussed above, because under the Exchange Act and Rule G-42, a municipal advisor owes more rigorous obligations and duties to a municipal entity client — that is, a fiduciary duty — than are owed to a conduit borrower, in certain scenarios involving dual representation, a municipal advisor may find it difficult, or not possible, to fully comply with its obligations to both clients under Rule G-42.

The MSRB recognizes that, at times, both the issuer and the conduit borrower are municipal entities, and, in this discussion, a conduit borrower that is a municipal entity is referred to as a municipal entity conduit borrower. In such cases, a municipal advisor that provides advice to or on behalf of the issuer and the municipal entity conduit borrower would owe the more rigorous duties required of a fiduciary to both clients equally (*e.g.*, the municipal advisor would be required, in all contexts, to deal honestly and with the utmost good faith with the issuer and the municipal entity conduit borrower, and, as to each, to act in the client's best interests without regard to the financial or other interests of the municipal advisor).

Before undertaking such a dual engagement, the municipal advisor must assess its ability to comply with Rule G-42, including the proscription in Rule G-42, SM .02, which prohibits a municipal advisor from engaging in municipal advisory activities for a client if the municipal advisor could not manage or mitigate its conflicts of interest in a manner that would permit the municipal advisor to act in the best interests of the client. In addition, if the dual representation were undertaken, the municipal advisor's assessment of its ability to fully comply with Rule G-42, including SM .02, should be carefully considered at the beginning of the dual representation and thoughtfully re-considered periodically during the course of the dual engagement. In the MSRB's view, the facts and circumstances wherein a municipal advisor would be able to fully comply with Rule G-42, including all obligations as a fiduciary to each municipal entity, are not likely to occur frequently.

> *This interpretive guidance is intended for use only as a resource. It does not describe all provisions of Rule G-42. In addition, the MSRB has adopted other rules and interpretations that may be applicable to the conduct described in the five scenarios.*

---

[1]   This guidance is limited to persons that are municipal advisors as defined in Section 15B(e)(4) of the Securities Exchange Act of 1934 ("Exchange Act"), and the relevant rules and regulations promulgated pursuant to the Exchange Act ("Exchange Act rules"), but excludes municipal advisors engaged solely in the undertaking of a solicitation of a municipal entity or an obligated person, for compensation, on behalf of certain third parties ("solicitor municipal advisors"), because Rule G-42 does not apply to solicitor municipal advisors. *See* Exchange Act Release No. 70462 (September 20, 2013), 78 FR 67467 (November 12, 2013) ("Order Adopting SEC Final Rule") (the Exchange Act rules and regulations referred to above include,

    but are not limited to, Exchange Act Rules 15Ba1-1 through 15Ba1-8. *See also* Section 15B(e)(4)(A)(ii); Exchange Act Rule 15B a1-1(d)(1)(i) (the term "municipal advisor" includes solicitors of obligated persons); Section 15B(e)(9) of the Exchange Act (definition of "solicitation of a municipal entity or obligated person"); and Order Adopting SEC Final Rule, 78 FR 67467, at n. 138 and n. 408.

2  In Exchange Act Rule 15Ba1-1(e), the term "municipal advisory activities" means "(1) [p]roviding advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities, including advice with respect to the structure, timing, terms, and other similar matters concerning such financial products or issues; or (2) [s]olicitation of a municipal entity or an obligated person." Further, the Rule provides that, in the absence of an exclusion or an exemption, these activities would cause a person to be a municipal advisor.

3  Although the term "conduit borrower" is not specifically defined in the Exchange Act, a conduit borrower in a municipal securities issuance, such as a private university, non-profit hospital, private corporation, or a public hospital or public university, is a type of "obligated person." See Order Adopting SEC Final Rule, at 67483, n. 200 (the term obligated person can include entities acting as conduit borrowers, such as private universities and non-profit hospitals).

    The term, "obligated person," is defined in Exchange Act Section 15B(e)(10) to mean:

    any person, including an issuer of municipal securities, who is either generally or through an enterprise, fund, or account of such person, committed by contract or other arrangement to support the payment of all or part of the obligations on the municipal securities to be sold in an offering of municipal securities.

    Generally, for purposes of this guidance, the terms "obligated person" and "conduit borrower" have the same meaning. In addition, for this guidance, both terms exclude a municipal entity acting as an issuer of municipal securities.

4  15 U.S.C. 77a *et seq*.

5  15 U.S.C. 77c(a)(4).

6  17 CFR 230.500 – 508.

7  15 U.S.C. 77c(a)(2).

8  *See* Order Adopting SEC Final Rule, at 67477 (the SEC concluded that compensation should not factor into a determination of whether a person must register (or be registered) as a municipal advisor, except in connection with solicitor municipal advisors; in such cases, the person *must be* compensated for such solicitation activity to be required to register (or be registered) as a municipal advisor).

9  These requirements include, but are not limited to: complying with the broad obligations under the duty of care under Rule G-42(a)(i) and Supplemental Material ("SM") .01 under the rule in all aspects of the municipal advisor's municipal advisory relationship with the conduit borrower; making the required disclosures to the conduit borrower regarding material conflicts of interest and material legal and disciplinary events (and updating them as necessary) as set forth in Rule G-42(b) and SM .05; providing relationship documentation to the conduit borrower (and updating the documentation as necessary) as provided in Rule G-42(c) and SM .05 and SM .06; if making a recommendation to the conduit borrower, or if reviewing a recommendation from the issuer or another party to the conduit borrower, following the requirements of Rule G-42(d) and SM .09 and SM .10; and not engaging in the specifically prohibited conduct as outlined in Rule G-42(e)(i) and SM .11.

10  In the Order Adopting SEC Final Rule, the SEC provided guidance to interpret "advice" as that term is used in the definition of municipal advisor and related terms. See Order Adopting SEC Final Rule, at 67471 (providing examples of communications that are excluded from the term "advice") and 67478 - 80 (SEC guidance regarding the meaning of "advice," statement that the SEC does not believe that the term "advice" is susceptible to a bright-line definition).

    Jurisdiction to resolve the interpretive issue of whether "advice" has been provided, based on the facts and circumstances, lies with the SEC.

11  *See* Exchange Act Section 15B(e)(4)(A)(i).

12  *See* Order Adopting SEC Final Rule, at 67479.

13  SM .01 of Rule G-42 sets forth core principles regarding the duty of care a municipal advisor owes to all clients, whether issuers or conduit borrowers. The duty of care includes, but is not limited to, the specific duties enumerated in the rule. For example, to fulfill its obligations under the duty of care, the municipal advisor must, among other things: possess the degree of knowledge and expertise needed to provide the client with informed advice; make a reasonable inquiry as to the facts that are relevant to a client's determination as to whether to proceed with a course of action or that form the basis for advice provided to the client; and undertake a reasonable investigation to determine that it is not basing any recommendation on materially inaccurate or incomplete information. Also, a municipal advisor must have a reasonable basis for any advice provided to or on behalf of a client; any representations made in a certificate that it signs that will be reasonably foreseeably relied upon by the client, any other party involved in the municipal securities transaction, or investors in the issuer's securities or municipal securities secured by payments from the conduit borrower client; and any information provided to the client or other parties involved in the municipal securities transaction in connection with the preparation of an official statement for any issue of municipal securities as to which the municipal advisor is advising. For example, to make a recommendation that complies with the duty of care, prior to making a recommendation, a municipal advisor is required to determine if the recommended municipal securities transaction is suitable, based on numerous factors, as applicable to the particular type of client. Various factors are set forth in SM .09 and include, but are not limited to: the client's financial situation and needs, objectives, tax status, risk tolerance, liquidity needs, the client's experience with, in this scenario, the issuance of municipal securities and related municipal securities transactions, the client's experience with municipal securities issuance and related municipal securities transactions of the type and complexity being recommended, the client's financial capacity to withstand changes in market conditions during the period that the municipal securities to be issued are reasonably expected to be outstanding and any other material information known by the municipal advisor about the client and the municipal securities issuance, after reasonable inquiry.

14  *See* Order Adopting SEC Final Rule, at 67479.

15  *See supra* notes 10-12, and accompanying text.

16  SM .02 of Rule G-42 sets forth core principles regarding the duty of loyalty owed to the issuer. Under SM .02, the duty of loyalty includes, but is not limited to, the duties and obligations to "deal honestly and with the utmost good faith with a municipal entity client and act in the client's best interests without regard to the financial or other interests of the municipal advisor." In addition, "[a] municipal advisor must not engage in municipal advisory activities for a municipal entity client if it cannot manage or mitigate its conflicts of interest in a manner that will permit it to act in the municipal entity's best interests."

17  *See* n. 13, *supra*.

18  Additional information and requirements regarding the specific prohibition in Rule G 42(e)(ii) are set forth in SM .13, SM .14 and SM .15.

19  More specifically, requestors asked if the MSRB would confirm that full and fair disclosure of any conflicts of interest or other issues would address any concerns under the Rule with the result that there would be no unmanageable conflict of interest or issue that would prevent a municipal advisor from advising both an issuer and a conduit borrower (or two advisors from the same firm from representing, separately, an issuer and the related conduit borrower) as required under SM .02.

20  The MSRB believes that a conflict of interest arises in a dual representation described in the Second Scenario as it does in the First Scenario, when a municipal advisor provides municipal advisory services to a conduit borrower and the payment for such services is provided by a third-party, such as an issuer, in that such circumstances often can create or foster divided loyalties. In both cases, the MSRB believes that the potential that such

    conflicts of interest, which are present at the onset of such relationship(s), may later become material conflicts of interest requires, at a minimum, that such conflict(s) be disclosed initially to the client(s) pursuant to Rule G-42(b)(i)(F).

[21]  Rule G-42(c)(vi) requires that the written documentation of the municipal advisory relationship include, in writing, "the date, triggering event, or means for the termination of the municipal advisory relationship, or, if none, a statement that there is none." Rule G 42(c)(vii) requires that the written documentation include "any terms relating to withdrawal from the municipal advisory relationship."

[22]  As noted above, all of the municipal advisor's obligations and duties cannot be specifically enumerated or identified at the beginning of the dual representation. Instead, the duties and obligations under either standard of conduct will unfold during the dual representation.

[23]  The Third Scenario is limited to situations where an issuer chooses not to retain a separate municipal advisor. However, changing the facts and circumstances of the Third Scenario to include the retention of another municipal advisor by the issuer is not conclusive in determining if Rule G-42 would apply to the municipal advisor retained by the conduit borrower in its conduct with the issuer. If the municipal advisor retained by the conduit borrower provides municipal advisory services indirectly or, as a practical matter, to the issuer, and if the SEC interprets such conduct as engaging in municipal advisory activity for or on behalf of the issuer, the provision of such advice makes Rule G-42 applicable to the provider, except where the provider is subject to an exclusion or an exemption (from the definition of municipal advisor), such as the Independent Registered Municipal Advisor exemption provided under Exchange Act Rule 15Ba1-1(d)(3)(vi).

**Rule G-42 Amendment History (since 2004)**

Release No. 34-83177 (May 7, 2018), 83 FR 21794 (May 10, 2018); MSRB Notice 2018-08 (May 7, 2018)

Release No. 34-78622 (August 22, 2016), 81 FR 58989 (August 26, 2016); MSRB Notice 2016-20 (August 12, 2016)

Release No. 34-76753 (December 23, 2015), 80 FR 81614 (December 30, 2015); MSRB Notice 2016-03 (January 13, 2016)