# EXHIBIT E

**U.S. Securities and Exchange Commission**

# UNITED STATES OF AMERICA
# before the
# SECURITIES AND EXCHANGE COMMISSION

SECURITIES ACT OF 1933
Release No. 7775 / November 17, 1999

SECURITIES EXCHANGE ACT OF 1934
Release No. 42148 / November 17, 1999

ADMINISTRATIVE PROCEEDING
File No. 3-10100

| In the Matter of | ORDER INSTITUTING ADMINISTRATIVE PROCEEDINGS, MAKING FINDINGS, ISSUING A CEASE-AND-DESIST ORDER, AND IMPOSING REMEDIAL SANCTIONS |
|---|---|
| Arthurs Lestrange & Company, Inc., and Michael P. Bova, Respondents. | |

I.

The Securities and Exchange Commission (the "Commission") deems it appropriate and in the public interest that public administrative proceedings be, and they hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Sections 15(b) and 15B(c) of the Securities Exchange Act of 1934 ("Exchange Act") against Arthurs Lestrange & Company, Inc. ("Arthurs Lestrange") and Michael P. Bova ("Bova").

In anticipation of the institution of these proceedings, Arthurs Lestrange and Bova have each submitted an offer of settlement, which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceeding brought by or on behalf of the Commission or in which the Commission is a party, and prior to a hearing pursuant to the Commission's Rules of Practice, 17 C.F.R. §201.100 et seq., Arthurs Lestrange and Bova, without admitting or denying the findings contained herein, except that each admits to the jurisdiction of the Commission over them and over the subject matter of these proceedings, consents to the entry of the findings, the institution of the cease-and-desist order, and the imposition of the remedial sanctions set forth below.

II.

Based on the foregoing, the Commission finds as follows:[1]

A. Respondents

1. Arthurs Lestrange & Company, Inc. ("Arthurs Lestrange") is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. At all relevant times, Arthurs Lestrange was a broker-dealer and municipal securities dealer registered with the Commission pursuant to Sections 15(b) and 15B(a)(2) of the Exchange Act.

EXHIBIT E
2

2. Michael P. Bova, 51, is a resident of Upper St. Clair Township, Pennsylvania. At all relevant times, Bova was Senior Vice President and head of municipal finance for Arthurs Lestrange.

B. Other Relevant Person

Dennis E. "Harvey" Thiemann ("Thiemann"), age 55, is a resident of Shermans Dale, Pennsylvania. Thiemann is the founder of a privately held consulting firm called HDI, Inc. Thiemann and his wife are HDI's only shareholders and employees.

C. Summary

This matter arises out of two municipal bond refunding transactions by the Commonwealth of Pennsylvania in 1994 (hereinafter referred to jointly as the "Pennsylvania Refundings").[2] Arthurs Lestrange served as financial adviser to the Commonwealth for the refundings. With Bova's and Arthurs Lestrange's authorization, Thiemann, a consultant to Arthurs Lestrange, helped arrange for Arthurs Lestrange to split fees with another broker-dealer, Alex. Brown & Sons, Inc. ("Alex. Brown"), which was selected to sell United States Treasury securities to the Commonwealth to fund defeasance escrows for the refundings. As financial adviser, Arthurs Lestrange and Bova occupied a position of trust and confidence on the Pennsylvania Refundings. Bova was thus required to disclose all material facts to the Commonwealth fully and completely. Bova disclosed the existence of the fee-splitting agreement in a letter to the Commonwealth, but his letter contained material misstatements and omissions concerning the nature and extent of the agreement, and Arthurs Lestrange's payments to Thiemann's firm, HDI.

C. Facts

In 1993, Arthurs Lestrange proposed to Commonwealth officials refundings of up to $2 billion worth of bonds. Ultimately, two refundings resulted: (1) the Commonwealth of Pennsylvania $494,145,000 General Obligation Bonds First Series, which closed in March 1994 (the "March Refunding") and (2) the Commonwealth of Pennsylvania $469,616,337.34 General Obligation Bond Second Series 1994, which closed in June 1994 (the "June Refunding"). Arthurs Lestrange was appointed financial adviser to the Commonwealth for the transactions.

As financial advisor, Arthurs Lestrange reported to the Governor's Budget Office. Based on his knowledge of a previous Commonwealth bond refunding, Thiemann understood that a different office -- the Pennsylvania Treasurer's Office -- had in the past selected securities dealers to sell open market Treasury securities to the Commonwealth, and he believed the Treasurer's Office would be selecting a securities dealer to sell open market Treasury securities to the Commonwealth for the 1994 Pennsylvania Refundings. Thiemann and Bova believed that the assignment could be lucrative for the dealer. In January 1994, Thiemann approached Bova with the idea of having Arthurs Lestrange share in the revenues on the sale of the escrow securities. Thiemann and Bova believed, however, that Commonwealth officials would view Arthurs Lestrange as too small a firm to handle the purchase and sale of hundreds of millions of dollars in U.S. Treasury securities.

Accordingly, Thiemann proposed to Bova that he would try to find a larger broker-dealer that could be selected to provide the escrow securities and would agree to split its revenues on a 60/40 basis with Arthurs Lestrange, with Arthurs Lestrange receiving the 60 percent share. Thiemann further proposed that, if he were successful, Arthurs Lestrange would pay him one-third of its share of the refunding revenues. Bova agreed to Thiemann's proposal.

**EXHIBIT E**

3

Shortly thereafter, Bova was contacted by a senior public finance banker (the "Senior Banker") at Alex. Brown. During the course of their initial contacts, the Senior Banker informed Bova that his firm had been selected to sell the defeasance escrow securities in the upcoming refunding. The Senior Banker offered that Alex. Brown and Arthurs Lestrange would pool their respective revenues from the transaction and split the revenues on a 60/40 basis, with Arthurs Lestrange receiving 60 percent of the pool. Prior to these contacts, Bova did not know the Senior Banker and had never worked with him. However, Bova believed Alex. Brown to be a well-known and well-capitalized broker-dealer.

In early discussions, Bova and the Senior Banker went over revenues that they expected Alex. Brown and Arthurs Lestrange to contribute to the pool from their anticipated fees on the March Refunding. The revenues related to the sale of the escrow securities were expected to substantially exceed the revenues from Arthurs Lestrange's financial advisory fee.

On or about February 18, 1994, Bova sent a letter to Commonwealth officials which stated:

This is to inform you that Arthurs Lestrange as Financial Adviser, and Alex Brown, as Escrow Agent, intend to pool and then mutually apportion their respective compensation for serving as Financial Adviser and Escrow Agent on the upcoming refunding. The efforts so far by each firm have been so inextricably integrated with the other firm that we are, in effect, working as partners on a day-to-day basis.

On a deal this size, with its significant complexity and critical-timing issues, close professional cooperation by the entire Commonwealth team (the issuer's overall financial adviser and the issuer's technical support -- the escrow agent) will only serve to maximize the benefits for the issuer.

After the March Refunding closed, Alex. Brown and Arthurs Lestrange combined and allocated their pooled fees in accordance with their 60/40 fee-splitting agreement. The total pooled fees from the transaction were $2,604,457.10. Arthurs Lestrange contributed $210,000 to the pool, which was its fee for serving as the Commonwealth's financial adviser. Alex. Brown contributed $2,394,457.10 in revenues related to the sale of the defeasance escrow securities. In accordance with the split formula, Arthurs Lestrange received $1,562,674.26 and Alex. Brown received $1,041,782.84. Pursuant to its agreement with Thiemann, Arthurs Lestrange thereafter paid Thiemann's company, HDI, one-third of its share of the pooled revenues, or $520,891.42.

Thiemann played no substantive role in the transactions other than helping to arrange for Arthurs Lestrange to share in the revenues resulting from the sale of the defeasance escrow securities. Arthurs Lestrange paid Thiemann's company, HDI, one-third of its revenues because Arthurs Lestrange would not have shared in the revenues related to the sale of the defeasance escrow securities without Thiemann's involvement.

Thiemann's company, HDI, made certain payments from its share of the refunding revenues in connection with efforts to arrange for Alex. Brown to be appointed to provide the escrow securities and to split its revenues with Arthurs Lestrange. (Bova has attested that, at the time of the March Refunding, he asked Thiemann whether he was sharing his fees with anyone, and Thiemann told him that he was not.) Patrick H. McCarthy, an attorney who wielded a high degree of influence at the Treasurer's office, suggested to the Senior Banker that Alex. Brown could be appointed escrow provider if it would agree to split fees 60/40 with Arthurs Lestrange. The Senior Banker agreed and thereafter telephoned Bova, as described above. McCarthy then used his influence within the Treasurer's Office to have Alex.

Brown named as escrow provider for the March Refunding. McCarthy's law firm received payments from HDI for McCarthy's role in the transaction.

D. Legal Discussion

Section 17(a) of the Securities Act prohibits materially false or misleading statements, or material omissions when there is a duty to speak, in the offer or sale of any security. Section 17(a)(1) requires a showing of scienter; however, Sections 17(a)(2) and 17(a)(3) do not require such a showing. Aaron v. SEC, 446 U.S. 680, 697 (1980). Violations of Sections 17(a)(2) and (3) may be established by showing negligence. SEC v. Hughes Capital Corp., 124 F.3d 449, 453-54 (3d Cir. 1997); SEC v. Steadman, 967 F.2d 636, 643 n.5 (D.C. Cir. 1992). A duty to speak arises, and material omissions become fraudulent, when a person or entity has information that another is entitled to know because of a fiduciary or similar relationship of trust and confidence. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-55 (1972); Chiarella v. United States, 445 U.S. 222, 228 (1980); In re Arleen W. Hughes, 27 S.E.C. 629 (1948), aff'd, 174 F.2d 969 (D.C. Cir. 1949).

Generally, a financial adviser to a state or local issuer owes fiduciary obligations to it in connection with bond financings by the issuer.[3] Arthurs Lestrange also was a fiduciary under Pennsylvania law because the Commonwealth reposed trust in the skill and integrity of Arthurs Lestrange as its financial adviser, and the Commonwealth had a "just foundation for belief" that Arthurs Lestrange was acting in the Commonwealth's best interest. See Antinoph v. Laverell Securities, 703 F.Supp. 1185 (E.D. Pa. 1989); Lazin v. Pavilion Partners, 1995 U.S. Dist. LEXIS 15255, Civ.A. No. 95-601, 1995 WL 614018 (E.D. Pa. Oct. 11, 1995). As a fiduciary which earned substantial revenues from the Escrow Provider's sale of the escrow securities to the Commonwealth, Arthurs Lestrange was obligated to disclose all material circumstances fully and completely. Cf. Arleen W. Hughes, 27 SEC at 636; see also Restatement 2d of Agency, section 390, comment a.

In addition, apart from any fiduciary status, Bova was obligated to make full disclosure of information necessary in order to make the statements made in his February 18 letter not materially misleading. See, e.g., Kline v. First Western Government Securities, 24 F.3d 480 (3d Cir. 1994); Maryland National Bank v. Dauphin Deposit Bank and Trust Co., 647 F.Supp. 908 (M.D. Pa. 1986).

Bova's February 18th letter to the Commonwealth contained material misstatements and omissions. Although the letter disclosed that Arthurs Lestrange and Alex. Brown had agreed to "pool" and "apportion" their respective fees, it failed to disclose that Arthurs Lestrange would receive the largest portion of the pooled revenues notwithstanding that its own contribution would be much smaller than that of Alex. Brown. The letter also failed to disclose that Arthurs Lestrange had agreed to pay one-third of its share to Thiemann's company for bringing a share of the escrow revenues to Arthurs Lestrange. These facts were material because they would have called into question the integrity of the process by which Alex. Brown was selected as escrow provider.[4] The Commonwealth also would have wanted to know if its financial adviser was receiving disproportionate revenues from the sale of the escrow securities because this could have signaled that Arthurs Lestrange had a strong incentive for the refunding to close, and therefore a potential conflict of interest.

Bova knew or should have known that the February 18th letter was materially misleading, given his understanding of Arthurs Lestrange's arrangement with Alex. Brown. Further, even if Thiemann told Bova that he

**EXHIBIT E**
5

was not sharing fees, as Bova has claimed, certain "red flags" should have caused Bova to investigate further what caused Alex. Brown to contact him. These included the facts that the Senior Banker, with whom Bova had had no previous contact, offered to share 60% of Alex. Brown's revenues with Arthurs Lestrange, although Arthurs Lestrange had no relationship with the Treasurer's office, and was expected to generate less revenues in the refundings than Alex. Brown. *See* In the Matter of Dean McDermott et al., Securities Act Release No. 7502 (Jan. 30, 1998).

For purposes of Arthur Lestrange's violations, the conduct of Bova may be imputed to the firm. *See* SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1089 n. 3 (2d Cir. 1972); Converse, Inc. v. Norwood Venture Corp., 1997 Fed. Sec.L.Rep. (CCH) §90,121 (S.D.N.Y. 1997); Blanchard v. Edgemark Financial Corp., Fed. Sec.L.Rep. (CCH) §90,439 (N.D. Ill. 1999).

III.

On the basis of the foregoing, the Commission finds that Bova and Arthurs Lestrange each willfully violated Sections 17(a)(2) and (3) of the Securities Act. [5]

IV.

Arthurs Lestrange has submitted an Offer of Settlement in which, without admitting or denying the findings herein, it consents to the Commission's entry of this Order, which: (1) makes findings, as set forth above; (2) censures Arthurs Lestrange; (3) orders Arthurs Lestrange to cease and desist from committing or causing any violations and any future violations of Sections 17(a)(2) and (3) of the Securities Act; and (4) orders Arthurs Lestrange to pay a civil penalty in the amount of $100,000.

V.

Bova has submitted an Offer of Settlement in which, without admitting or denying the findings herein, he consents to the Commission's entry of this Order, which: (1) makes findings, as set forth above; (2) censures Bova; (3) orders Bova to cease and desist from committing or causing any violations and any future violations of Sections 17(a)(2) and (3) of the Securities Act; and (4) orders Bova to pay a civil penalty in the amount of $35,000.

VI.

In view of the foregoing, the Commission deems it appropriate and in the public interest to accept the Offers of Settlement submitted by Arthurs Lestrange and Bova.

Accordingly, IT IS ORDERED, pursuant to Section 8A of the Securities Act, and Sections 15(b) and 15B(c) of the Exchange Act, that:

> 1. Arthurs Lestrange is censured.
>
> 2. Arthurs Lestrange shall cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and (3) of the Securities Act.
>
> 3. Arthurs Lestrange shall, within thirty (30) days of the date of this Order, pay a civil money penalty in the amount of $100,000 to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check or bank money order; (2) made payable to the United States Securities and Exchange Commission; (3) hand-delivered or mailed to the Comptroller, Securities and Exchange Commission, Operations Center,

6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (4) submitted under cover letter that identifies Arthurs Lestrange as a Respondent in these proceedings, and states the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Brian A. Ochs, Assistant Director, Division of Enforcement, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549-0805.

4. Bova is censured.

5. Bova shall cease and desist from committing or causing any violations and any future violations of Section 17(a)(2) and (3) of the Securities Act.

6. Bova shall, within thirty (30) days of the date of this Order, pay a civil money penalty in the amount of $35,000 to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check or bank money order; (2) made payable to the United States Securities and Exchange Commission; (3) hand-delivered or mailed to the Comptroller, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; and (4) submitted under cover letter that identifies Bova as a Respondent in these proceedings, and states the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Brian A. Ochs, Assistant Director, Division of Enforcement, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549-0805.

By the Commission.

Jonathan G. Katz
Secretary

Footnotes

[1] The findings herein are not binding on anyone other than the Respondents.

[2] In a refunding, the municipality issues new "refunding" bonds and immediately invests the proceeds in a portfolio of U.S. Treasury or agency securities structured to pay the principal and interest obligations on older, higher interest rate, bonds until the call date and then to pay off the outstanding principal and any call premium. The portfolio of government securities is normally placed in a defeasance escrow to guarantee repayment of the old bonds. For a further discussion of refunding bond issues and defeasance escrows used in such transactions see In the Matter of Lazard Freres & Co. LLC, Exchange Act Release No. 41318 (April 21, 1999).

[3] See, e.g., Order Approving Proposed Rule Change of MSRB Relating to Activities of Financial Advisors, Exchange Act Release No. 30258 (Jan. 16, 1992) ("The MSRB . . . believes that the existence of the conflict of interest [faced by a dealer acting as both financial advisor and placement agent on the same issue] is contrary to the fiduciary obligations of municipal securities professionals acting as financial advisors to issuers . . . ."); Notice by MSRB of Proposed Rule G-23, 42 Fed. Reg. 49856, 49859 (Sept. 28, 1977) ("As a financial advisor, the municipal securities professional acts in a fiduciary capacity as agent for the governmental unit . . . ."); cf. In re O'Brien Partners, Inc., Securities Act Release No. 7594 (October 27, 1998) (violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act for failure to make full disclosure in breach of fiduciary duty owed as municipal

**EXHIBIT E**
7

financial advisor). The term financial advisor is not defined in the federal securities laws. However, Rule G-23(b) of the Rules of the Municipal Securities Rulemaking Board provides that "a financial advisory relationship shall be deemed to exist when a broker, dealer, or municipal securities dealer renders or enters into an agreement to render financial advisory or consultant services to or on behalf of an issuer with respect to a new issue or issues of municipal securities, including advice with respect to the structure, timing, terms and other similar matters concerning such issue or issues, for a fee or other compensation or in expectation of such compensation for the rendering of such services."

[4] *See* Statement of the Commission Regarding Disclosure of Municipal Securities Issuers and Others, Securities Act Release No. 7049 (March 9, 1994) ("Information concerning financial and business arrangements among parties involved in the issuance of municipal securities may be critical to evaluating an offering...").

[5] In applying the term "willful" in Commission administrative proceedings instituted pursuant to Sections 15(b), 15B, 15C, 17A and 19(h) of the Securities Exchange Act, Section 9 of the Investment Company Act, and Section 203 of the Investment Advisers Act, the Commission evaluates on a case-by-case basis whether the respondent knew or reasonably should have known under the particular facts and circumstances that his conduct was improper. In this case, as in all Commission administrative proceedings charging a willful violation under these statutory provisions, the Commission applies this standard to persons -- specifically, securities industry professionals -- who are directly subject to Commission jurisdiction and who have a responsibility to understand their duties to the investing public and comply with the applicable rules and regulations which govern behavior.

*http://www.sec.gov/litigation/admin/33-7775.htm*

Home | Previous Page                                              Modified:11/17/1999

**EXHIBIT E**
**8**