# EXHIBIT G



Home | Previous Page

**U.S. Securities and Exchange Commission**

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES ACT OF 1933**
**Release No. 7973 / April 23, 2001**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-10221**

| | |
|---|---|
| In the Matter of<br><br>JOHN S. REGER II, and<br>BUSINESS & FINANCIAL ADVISORS, INC. | ORDER MAKING FINDINGS AND IMPOSING CEASE-AND-DESIST ORDER AND OTHER RELIEF |

**I.**

In these proceedings instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") and Sections 15(b)(6), 15B(c)(4), 19(h) and 21C of the Securities Exchange Act of 1934 (the "Exchange Act"), respondents John S. Reger II and Business & Financial Advisors, Inc. (collectively, "Respondents"), pursuant to Rule 240(a) of the Securities and Exchange Commission's (the "Commission") Rules of Practice, 17 C.F.R. § 201.240(a), have submitted an Offer of Settlement ("Offer") which the Securities and Exchange Commission has determined to accept.[1] Solely for the purpose of this proceeding and any other proceeding brought by or on behalf of the Commission or in which the Commission is a party, and without admitting or denying the findings contained herein, except for jurisdiction over them and the subject matter of this proceeding, which is admitted, Respondents, by their Offer, consent to the entry of the findings and the imposition of sanctions contained in this Order Making Findings and Imposing Cease-and-Desist Order and Other Relief ("Order").

**II.**

On the basis of this Order and the Offer submitted by Respondents, the Commission makes the following findings:

**1. Respondents**

John S. Reger II ("Reger") was at all relevant times the president, sole employee, and sole shareholder of Business & Financial Advisors, Inc.

Business & Financial Advisors, Inc. was at all relevant times a financial consulting firm founded by Reger in 1990 and incorporated in the State of West Virginia.

**2. Summary**

This case concerns Reger's failure to adequately disclose to an issuer of municipal securities located in the State of West Virginia (the "Board") a

**EXHIBIT G**
2

payment arrangement relating to the sale of government securities to the Board. Under that payment arrangement, Reger received $104,000 through BFA in return for Reger's selection of a particular broker-dealer (the "Escrow Provider") to serve as the provider of U.S. Treasury securities in a Board advance refunding transaction. Reger breached his fiduciary duty to the Board by not adequately disclosing to the Board the payment arrangement and associated conflicts of interest. Reger also did not disclose to potential purchasers of the Board's advance refunding bonds the payment arrangement or the risk that the payment arrangement might jeopardize the tax-exempt status of the Board's advance refunding bonds.

### 3. Facts

In 1993, Reger began acting as the Board's financial adviser in connection with a proposal to issue bonds to finance various capital improvements (the "Capital Improvement Bonds"). The Capital Improvement Bonds were ultimately approved by the voters at a bond referendum held in March 1995 and issued by the Board in June 1995.

In January 1995, Reger proposed to the Board that it refinance certain prior indebtedness through the issuance of new "advance refunding" bonds (the "1995 Advance Refunding Bonds").[2] The Board accepted Reger's proposal, and the 1995 Advance Refunding Bonds were issued in March 1995. Reger participated in the drafting, editing and review of the disclosure document (known as an Official Statement) prepared in connection with the public offering of the Board's 1995 Advance Refunding Bonds. Reger also obtained permission from the Board to take various actions in connection with the 1995 Advance Refunding without further authority, particularly the investment of bond proceeds and the delivery of the defeasance securities.

Reger selected the Escrow Provider to act as the escrow securities provider in the 1995 Advance Refunding. Escrow securities providers generally select and sell to an issuer the relevant portfolio of government securities for placement in the defeasance escrow established as part of an advance refunding transaction. Reger did not solicit proposals from any other entities that might be interested in acting as escrow provider for the transaction. Reger had a pre-existing arrangement with the Escrow Provider under which Reger would receive forty percent of the Escrow Provider's profits from the sale of government securities for defeasance escrows. Reger received such payments in three prior advance refunding transactions occurring in 1993. Reger had not disclosed this arrangement to the issuers in those prior advance refunding transactions.

In the 1995 Advance Refunding Reger did not adequately disclose the nature or consequences of the payment arrangement. Reger did not disclose to the Board the existence of the payment arrangement, the size of the payment Reger expected to receive from the Escrow Provider, the basis for calculating that payment, the various potential conflicts of interest resulting from the payment arrangement, or the risk that the payment from the Escrow Provider might jeopardize the tax-exempt status of the Board's 1995 Advance Refunding Bonds.

At the closing for the Board's 1995 Advance Refunding Bonds, a representative of the Escrow Provider executed a fraudulent certificate to the effect that the escrow securities had been sold to the Board at fair market value. The Board's Official Statement did not disclose the payment arrangement or the various implications of that payment arrangement, including, among other matters, the risk that the payment arrangement might jeopardize the tax-exempt status of the Board's 1995 Advance Refunding Bonds.

**EXHIBIT G**

3

Consistent with his payment arrangement with the Escrow Provider, in April 1995 Reger received a check from the Escrow Provider made out to BFA in the amount of $168,000, of which BFA retained $104,000. In 1997, the IRS made a preliminary determination that the Board's 1995 Advance Refunding Bonds were taxable. In 1998, the Escrow Provider entered into a settlement agreement with, among others, the IRS that in effect preserved the tax-exempt status of the 1995 Advance Refunding Bonds. Absent this settlement, interest on the bonds might have been declared taxable to bondholders.

### Legal Discussion and Findings

Sections 17(a)(2) and (3) of the Securities Act prohibit misrepresentations or omissions of material facts in the offer or sale of any security. Scienter is not required to prove violations of Sections 17(a)(2) or (3). Aaron v. SEC, 446 U.S. 680, 697 (1980). Instead, violations of these sections may be established by showing negligent conduct. SEC v. Hughes Capital Corp., 124 F.3d 449, 453-54 (3d Cir. 1997). For purposes of the Securities Act, a duty to disclose material information may be premised upon a fiduciary relationship, or the existence of a similar relationship of trust and confidence, which results in the party charged with the disclosure obligation being aware that the other party is relying on the relationship in making his or her investment decisions. See Chiarella v. United States, 445 U.S. 222, 228 (1980); United States v. Chestman, 947 F.2d 551, 568 (2d Cir. 1991), cert. denied, 112 S. Ct. 1759 (1992); Zweig v. Hearst Corp., 594 F.2d 1261, 1268 (9th Cir. 1979). A fiduciary relationship can exist between financial adviser and client when the relationship is marked by dependency and influence. Chestman, 947 F.2d at 568-69.

Reger and BFA knew, or should have known, that the tax-exempt status of the Board's 1995 Advance Refunding Bonds was in part dependent upon the purchase of the escrow securities being at "fair market value" as defined in the relevant Treasury regulations. Notwithstanding the Escrow Provider's fraudulent certificate to the contrary, Reger and BFA knew, or should have known, that the $168,000 payment by the Escrow Provider to Reger and BFA from the profits resulting from the sale of the escrow securities indicated that the escrow securities were not purchased in an arm's length transaction nor at fair market value.

Further, Reger and BFA had actual knowledge of the payment arrangement with the Escrow Provider. Notwithstanding Reger's participation in the drafting of the Official Statement, he did not disclose the payment arrangement or the various implications of that payment arrangement, and therefore assisted in preparing a disclosure document that Reger and BFA knew, or should have known, was misleading because it omitted material facts.

Reger and BFA owed a fiduciary duty to the Board, both as a financial adviser on the Capital Improvement Bonds and as agent of the Board in the investment of the 1995 Advance Refunding Bond proceeds in the escrow securities. As a result, Respondents were obligated to disclose all material facts concerning the selection of the Escrow Provider as escrow securities provider and the purchase of the escrow securities. See Hughes v. SEC, 174 F.2d 969 (D.C. Cir. 1949) (petitioner acted in dual capacity of investment adviser and broker, owed a fiduciary duty to her clients, and violated Section 17(a) by failing to make full disclosure concerning certain securities transactions). Reger's and BFA's failure to make full disclosure of those facts violated Sections 17(a)(2) and (3) of the Securities Act.

Section 8A of the Securities Act authorizes the Commission to enter a cease-and-desist order against an individual who has violated any provision of the Securities Act.

Based on the foregoing, the Commission finds that Reger and BFA

committed violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act.

### III.

In view of the foregoing, the Commission deems it appropriate to impose the sanctions specified in the Offer submitted by Respondents.

Accordingly, IT IS HEREBY ORDERED that Reger and BFA cease and desist from committing or causing any violation and any future violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act.

IT IS FURTHER ORDERED that Respondents shall pay disgorgement and prejudgment interest totaling $128,817.00 to the United States Treasury. Such payment shall be: (1) paid within twenty-one days after service of this Order; (2) made by United States postal money order, certified check, bank cashier's check or bank money order; (3) made payable to the Securities and Exchange Commission; (4) hand-delivered or mailed to the Comptroller, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Alexandria, Stop 0-3, VA 22312; and (5) submitted under cover letter that identifies John S. Reger II and Business & Financial Advisors, Inc. as Respondents in these proceedings and the file number of these proceedings, a copy of which cover letter and money order or check shall be sent to Ronald C. Long, District Administrator, Philadelphia District Office, Securities and Exchange Commission, 601 Walnut Street, Suite 1120 E., Philadelphia, PA 19106.

By the Commission.

Jonathan G. Katz
Secretary

**Footnotes**

[1] An Order Instituting Public Proceedings against Respondents was issued by the Commission on June 9, 2000.

[2] In a typical advance refunding, a public entity issues new "refunding" bonds and immediately invests the proceeds in a portfolio of U.S. Treasury or agency securities structured to pay the principal of and interest on old bonds up to and including the date on which the old bonds can be retired, either at maturity or at an earlier call date. The portfolio of government securities is normally placed in a segregated account known as a defeasance escrow to guarantee repayment of the old bonds. Defeasance escrow portfolios are subject to Internal Revenue Code provisions and Treasury regulations that prohibit the issuer of tax-exempt refunding bonds from earning tax arbitrage (that is, a profit from the rate differential between the taxable and tax-exempt markets). In addition, to prevent an issuer from diverting tax arbitrage to the seller of the escrow securities by paying artificially high prices, the relevant regulations provide, in effect, that the price paid by refunding bond issuers for escrow securities purchased in the secondary market cannot exceed the fair market value of the securities as defined in those regulations. The relevant regulations generally define "fair market value" as the price at which a willing buyer would purchase the investment from a willing seller in a bona fide, arm's length transaction. A failure to comply with the applicable regulations could threaten the tax-exempt status of the refunding bonds. A determination that purportedly tax-exempt refunding bonds were in fact taxable would significantly reduce the market value of those bonds.

*http://www.sec.gov/litigation/admin/33-7973.htm*

**EXHIBIT G**
**5**

Modified: 05/14/2001

**EXHIBIT G**
**6**