# EXHIBIT I

EXHIBIT I

1

 **Capital Markets**

May 8, 2018

██████████
██████████████
██████████████████
Vista, CA 92083

**<u>Engagement Letter</u>**

Dear ████████:

This letter (the "<u>Agreement</u>") confirms that ████████████████ (the "Company") has engaged BB&T Capital Markets, a division of BB&T Securities, LLC ("BB&T Capital Markets") to act as the Company's exclusive structurer and placement agent/underwriter in connection with the financing of Series 2018 Bonds (the "Transaction" or the "Financing").

As part of our services, we may provide advice concerning the structure, timing, terms, and other similar matters concerning an issue of municipal securities that we are underwriting/placing. However, we are serving as or intend to serve as an underwriter and not as a municipal advisor in the transaction. The Company acknowledges and agrees that: (i) the primary role of BB&T Capital Markets, as an underwriter/placement agent, is to purchase securities, for resale to investors, in an arm's-length commercial transaction between the Company and BB&T Capital Markets and that BB&T Capital Markets may have financial and other interests that differ from those of the Company; (ii) BB&T Capital Markets is not acting as a municipal advisor, financial advisor, or fiduciary to the Company and has not assumed any advisory or fiduciary responsibility to the Company with respect to the transaction contemplated hereby and the discussions, undertakings and procedures leading thereto (irrespective of whether BB&T Capital Markets has provided other services or is currently providing other services to the Company on other matters); (iii) the only obligations BB&T Capital Markets has to the Company with respect to the transaction contemplated hereby expressly are set forth in this agreement; and (iv) the Company has consulted its own financial and/or municipal, legal, accounting, tax and other advisors, as applicable, to the extent it deems appropriate, which the Company is encouraged to do. If the Company would like a municipal advisor in this transaction that has legal fiduciary duties to the Company, then the Company is free to engage a municipal advisor to serve in that capacity and to so notify BB&T Capital Markets in accordance with applicable SEC and MSRB rules.

During the coming months, we will work with you, and other members of the financing team to define and finalize an appropriate financing structure (which may include taxable and/or tax-exempt alternatives), establish a financing calendar, assemble the requisite resources as well as efficiently execute the transaction consistent with your timing and financial objectives. If the appropriate financing structure includes a tax-exempt offering, then further disclosures shall be provided to the issuer pursuant to MSRB Rule G-17.

BB&T Capital Markets is a division of BB&T Securities, LLC. Member FINRA/SIPC. BB&T Securities, LLC is a wholly owned nonbank subsidiary of BB&T Corporation, is not a bank, and is separate from any BB&T bank or nonbank subsidiary. Securities and insurance products or annuities sold, offered, or recommended by BB&T Securities are not a deposit, not FDIC insured, not guaranteed by a bank, not guaranteed by any federal government agency and may lose value.

**EXHIBIT I**

May 8, 2018
Page 2

## 1. **Services:**

The Company hereby retains BB&T Capital Markets and BB&T Capital Markets hereby agrees to provide the following services in connection with the Transaction and such other services as may be determined to be necessary or appropriate by either BB&T Capital Markets or the Company in its reasonable discretion (the "Services"):

(a) Review the financing structures available to the Company, including identifying and comparing the advantages and disadvantages of alternative structures to determine the appropriate plan of finance to provide a cost-effective means of financing while taking into account the Company's organizational, business and Transaction objectives.

(b) Assist in structuring (including soliciting credit commitments from banks and/or other institutional investors, as applicable) those terms and conditions for the debt such as maturities, interest rates, call features, security features and defining covenants for consideration and agreement, which, in combination, meet the requirements and objectives of the Company along with specific project, general market and economic conditions prevailing during the project and finance planning period and at the time of financing.

(c) Provide reasonable assistance to the Company and other members of the financing team in coordinating discussions with and securing the approval of any Issuer to issue the debt and in securing any other approvals or regulatory matters, as requested.

(d) Assist the Company, underwriter's counsel and other members of the financing team in the preparation of a Private Placement Memorandum and/or Preliminary and Final Official Statement, or other documents which describes the Company and the Transaction.

(e) In cooperation with the Company and underwriter's counsel (the specific firm to be determined), undertake due diligence review of the operations, financial condition, capabilities and constraints of the Company and assist where necessary with the documentation necessary to undertake the Transaction, including but not limited to the authorizing resolutions, bond purchase agreement(s) and/or placement agreement(s) and preliminary and final official statements/placement memoranda distributed to potential investors, as required.

(f) Use its best efforts to market the Transaction, serving as Underwriter/Placement Agent of the Transaction, and subject to a mutually satisfactory bond purchase agreement and other customary documentation and coordinate with all parties so as to consummate the sale of the bonds, if applicable.

(g) Over the course of the financing process, make BB&T Capital Market representatives available for meetings with the Company, the Issuer and other members of the financing team, as requested.

(h) Provide such other investment banking related services as may be reasonably requested by the Company in connection with the Financing contemplated herein and permissible under the Underwriter Exemption provided by the SEC's Municipal Advisor Rule, if applicable.

The acceptance and/or rejection of Services provided by BB&T Capital Markets are at the sole discretion of the Company.

**EXHIBIT I**

FOIA Confidential Treatment Requested by Choice Advisors LLC

May 8, 2018
Page 3

2. **Fees:**

The Company acknowledges and agrees that BB&T Capital Markets is the Company's exclusive structuring and placement agent/underwriter for the Transaction. The Company agrees to pay BB&T Capital Markets a maximum of $10.00 per bond for bonds rated investment grade. In the event the bonds are non-investment grade, BB&T reserves the right to charge an additional $2.50 per bond.

**3. Expenses:**

The Company acknowledges it will be responsible for reimbursement of reasonable underwriting and out-of-pocket expenses of BB&T Capital Markets associated with the Transaction in an amount not to exceed $5,000. Such additional expenses, billed at actual cost and payable at closing, are not included in BB&T Capital Markets' Fee. BB&T Capital Markets will work with the Company to provide a detailed estimate of all fees and expenses associated with the Transaction. The Company will be solely responsible for payment of its own out-of-pocket costs and expenses.

**4. Indemnification:**
The indemnification provisions which are attached hereto as Addendum A are hereby incorporated herein.

**5. Cooperation:**

In connection with this engagement, the Company agrees to assist BB&T Capital Markets by providing such information regarding the Company and the Transaction as may be reasonably requested by BB&T Capital Markets, and causing management of the Company, as well as members of the financing team, reasonably available to BB&T Capital Markets and investors. The Company represents and warrants that (i) all information provided by the Company will be complete and correct in all material respects when provided and will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein not misleading, (ii) all information provided to BB&T Capital Markets will be prepared by the Company in good faith and using assumptions deemed reasonable by the Company under the prevailing circumstances at the time assumption is made, and (iii) the Company will promptly notify BB&T Capital Markets of any material developments or changes to the Company's operating and/or financial status. The Company further agrees that BB&T Capital Markets may rely on such information provided by the Company without independent verification and that BB&T Capital Markets does not assume any responsibility for the accuracy or completeness of any such information. Additionally, working in collaboration with BB&T Capital Markets and other members of the financing team, the Company agrees to secure the approval of any Issuer to issue the Transaction and, as part of the process, have BB&T Capital Markets named as the sole book-running senior manager for the Transaction, as applicable.

The Company agrees that if the Company or any of its affiliates receives any inquiry relating to investor interest from an investor the Company will promptly inform BB&T Capital Markets of such inquiry.

**6. Term:**

Subject to the provisions of Paragraph 7 hereof, the term of this Agreement will begin on the date this Agreement is executed by the Company and will continue until the Financing occurs or this Agreement is terminated.

**EXHIBIT I**

FOIA Confidential Treatment Requested by Choice Advisors LLC

CHO-00002542

May 8, 2018
Page 4

**7.  Termination**:

Any party may terminate this Agreement at any time upon prior written notice from the terminating party to the non-terminating party with or without cause; provided, that, BB&T Capital Markets shall be paid all reimbursable expenses incurred up to but not including the date of termination. BB&T Capital Markets shall be under no obligation to proceed if (i) in the course of exercising due diligence it obtains information which, in its sole opinion, would have a substantially adverse effect on the marketing of the Transaction, or (ii) it finds that it is unable to perform its duties because of the Company's failure to cooperate as outlined in Paragraph 5 above.

**8.  Confidentiality**:

BB&T Capital Markets agrees that any information received from the Company during the term of this Agreement is confidential and will be used by BB&T Capital Markets solely in the course of the performance of its services hereunder and, except for such information as may be approved by the Company for delivery to prospective parties to the Transaction, BB&T Capital Markets agrees not to disclose such information to any person without the consent of the Company, except BB&T Capital Markets' or its affiliates, officers, employees or agents who need to know the information in furtherance of the Services or the Transaction.

**9.   No Third Party Benefits**:

The Company acknowledges and agrees that BB&T Capital Markets has been retained by the Company only and that the services provided by BB&T Capital Markets hereunder are solely for the benefit of the Company and are not intended to confer any rights on any other entities or persons, including, without limitation, any stockholders or other security holders, employees or creditors of the Company. No other entity or person is entitled to rely in any way on this engagement or any advice given or statements made to the Company hereunder.

The Company acknowledges and agrees that neither BB&T Capital Markets nor any of its affiliates are providing any legal, tax, accounting or regulatory advice in any jurisdiction. The Company shall consult with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of the risks, benefits and suitability of the Transaction, and neither BB&T Capital Markets nor any of its affiliates shall have any responsibility or liability to the Company with respect thereto.

The Company acknowledges and agrees that it is capable of evaluating and understanding and understands and accepts the terms, risks and conditions of the Transaction contemplated by this Agreement and that BB&T Capital Markets (i) is not the agent or fiduciary of the Company, its members, affiliates, creditors or employees or any other party; (ii) has not assumed and will not assume a fiduciary responsibility in favor of the Company with respect to any of the transactions contemplated hereby; (iii) BB&T Capital Markets and its affiliates may be engaged in a broad range of transactions that involve interests that differ from those of the Company and that BB&T Capital Markets has no obligation to disclose any of such interests by virtue of any fiduciary or advisory relationship; (iv) the Company shall consult with its own advisors and shall be responsible for making its own independent investigation and appraisal of the transaction contemplated hereby; and (v) the Company waives, to the fullest extent permitted by law, any claims it may have against BB&T Capital Markets for breach of fiduciary duty or alleged breach of fiduciary duty.

**EXHIBIT I**

FOIA Confidential Treatment Requested by Choice Advisors LLC

██████████████████████
May 8, 2018
Page 5

10. **Limitation of Liability:**

    In no event will BB&T Capital Markets or any of its parent company, subsidiaries or affiliates or any of its or their directors, officers, employees, agents or successors or assigns (hereafter, the "related parties") be liable for any damages or liabilities of any kind arising out of or relating to the Agreement or the services to be provided hereunder, except to the extent that such damages or liabilities directly resulted from the gross negligence or willful misconduct of BB&T Capital Markets.

11. **Affiliates of BB&T Capital Markets:**

    The Company acknowledges that various subsidiaries and affiliates of BB&T Capital Markets provide full-service investment banking, securities trading and brokerage services to customers in the ordinary course of their business. BB&T Capital Markets and one or more of such BB&T Capital Markets subsidiaries and affiliates may from time to time own or hold securities, options or other derivatives related to the securities of the Company and other parties interested in the Transaction. Subject to the confidentiality paragraph above, nothing contained in this Agreement or in any other agreement between the parties will prevent or otherwise limit BB&T Capital Markets or its parent company, subsidiaries or affiliates from carrying on any investment banking or other business with the Company or any other entity or person or from carrying on its other business as currently conducted or as it may be conducted in the future.

12. **Entire Agreement:**

    This Agreement and the attached indemnification and reimbursement provisions embody the entire agreement and understanding between the parties hereto. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect or any other provision of this Agreement, which will remain in full force and effect. This Agreement may not be amended or otherwise modified or waived except by an instrument in writing signed by both the Company and BB&T Capital Markets.

13. **Governing Law:**

    This Agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to the conflict of laws principles thereof. The Company and BB&T Capital Markets specifically agree that the federal and state courts in the City of Richmond, Virginia will have exclusive jurisdiction over any suit, action, proceeding, complaint or other dispute between the parties arising out of or relating to this Agreement or the services provided by BB&T Capital Markets hereunder, and any such suit, action, or proceeding will be brought only in one of such courts. With respect to any such suit, action, proceeding, complaint or other dispute, (i) each party irrevocably submits to the exclusive jurisdiction of the federal and state courts in the City of Richmond, Virginia and (ii) each party irrevocably waives any objection which it may have at any time to the venue of any such suit, action or proceeding brought in either such court; irrevocably waives any claim that any such suit, action or proceeding brought in either such court has been brought in an inconvenient forum and irrevocably waives the right to object, with respect to any such suit, action or proceeding brought in either such court, that such court does not have jurisdiction over such party. **Each party also waives any rights to a trial by jury.**

    If the terms of this engagement as set forth in this Agreement are satisfactory to the Company, please sign both copies of this Agreement and the attached Addendum A, maintain one copy for your files and return the other to us.

    We look forward to working with you on this engagement and appreciate very much the opportunity to be of service to you.

Very truly yours,

**EXHIBIT I**

FOIA Confidential Treatment Requested by Choice Advisors LLC

CHO-00002544

May 8, 2018
Page 6

**BB&T Capital Markets,**
**a division of BB&T Securities, LLC**

By:

Name: Richard Harmon
Title:   Managing Director – BB&T Capital Markets

Accepted:

Title: Executive Director

Date:   05/09/2018

Signature page to the Engagement Letter dated May 8, 2018
By and between BB&T Capital Markets and

**EXHIBIT I**
7

FOIA Confidential Treatment Requested by Choice Advisors LLC                    CHO-00002545

## ADDENDUM A

BB&T Capital Markets, a division of BB&T Securities, LLC ("BB&T Capital Markets") has been engaged by ████████████████████ (the "Company") pursuant to a letter agreement dated as of May 8, 2018 (the "Agreement") to which this Addendum A is attached.

In consideration for BB&T Capital Markets' agreement to provide the Services described in the Agreement, the Company hereby agrees that it will (a) defend, indemnify and hold harmless BB&T Capital Markets, its parent company, subsidiaries and affiliates and its and their directors, officers, employees, agents and successors and assigns (each, an "Indemnified Person") from and against any losses, suits, actions, claims, damages, costs and/or other liabilities which any Indemnified Person may incur as a result of, relating to or arising out of or in connection with (i) any actions or omissions of the Company or any one or more of its officers, members, employees or advisers arising out of the Agreement or the Transaction (as defined in the Agreement), (ii) the Agreement or the Services performed or to be performed by BB&T Capital Markets there under, (iii) any securities or other filings made by the Company, or (iv) any transaction involving or relating to the Company, and (b) reimburse each Indemnified Person for any legal or other expenses reasonably incurred by it, him or her in connection with investigating, preparing to defend or defending any lawsuits, claims or other proceedings arising in any manner out of or in connection with any matters set forth in (i) through (iv) above, provided, however, that no such indemnification shall be required to be paid to an Indemnified Party with respect to a Claim that is finally determined by a court of competent jurisdiction (after exhaustion of all appeals) to have resulted primarily and proximately from the gross negligence, bad faith or willful misconduct of such Indemnified Party.

If the foregoing indemnity is unavailable or insufficient for any reason to hold any Indemnified Party harmless in an instance when such Indemnified Party is entitled to indemnification under the first paragraph of this Annex A, then the Company shall contribute to any amounts paid or payable by an Indemnified Party in such proportion as appropriately reflects the relative fault of the Company and such Indemnified Party, as well as any other equitable considerations. For purposes hereof, the relative fault of each Indemnified Party and the Company shall be determined by reference to, among other things, whether the actions and omissions to act were by such Indemnified Party or the Company and the parties' relative intent, knowledge, access to information, and opportunity to correct or prevent such action or omission.

All amounts due to an Indemnified Party hereunder shall be payable by the Company promptly upon request by such Indemnified Party. In addition, the Company shall pay all reasonable costs and expenses (including attorneys' fees) incurred by an Indemnified Party to enforce the terms of this Annex A.

The Company further agrees that if the defendants in any such action include one or more Indemnified Persons and the Company and the Indemnified Persons and the Company shall have been advised by counsel that representation of such Indemnified Persons and the Company by the same attorney or firm of attorneys may be inappropriate under applicable standards of professional conduct due to actual or potential differing interests between them, the Indemnified Persons shall have the right to select separate counsel (reasonably satisfactory to the Company) to defend such action on behalf of such Indemnified Persons. It is understood that the Company shall, in connection with any such action or separate but substantially similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of only one separate firm of attorneys together with appropriate local counsel at any time for all Indemnified Persons.

Promptly after its receipt of notice of the commencement of any action or proceeding, any Indemnified Person will, if a claim in respect thereof is to be made against the Company pursuant to this Addendum A, notify the Company in writing of the commencement thereof; but omission so to notify the Company will not relieve the Company from any liability which the Company may have to any Indemnified Person, except the Company's obligations to indemnify for losses, claims, damages, liabilities or expenses to the extent that the Company suffers actual material prejudice as a result of such failure. If the Company

**EXHIBIT I**

FOIA Confidential Treatment Requested by Choice Advisors LLC

so elects, it may assume the defense of such action or proceeding in a timely manner, including the employment of counsel (reasonably satisfactory to BB&T Capital Markets) and payment of expenses, provided that the Company permits an Indemnified Person and counsel retained by an Indemnified Person at such Indemnified Person's expense to participate in such defense.

The Company will not, without BB&T Capital Markets' prior written consent which shall not be unreasonably withheld or delayed, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought under this letter, unless such settlement, compromise or consent includes an express, complete and unconditional release of BB&T Capital Markets and each other Indemnified Person from all liability and obligations arising therefrom. Without the Company's prior written consent, which shall not be unreasonably withheld, delayed or conditioned, no Indemnified Person shall settle or compromise any claim for which indemnification or contribution may be sought hereunder.

In addition, neither BB&T Capital Markets nor any of its affiliates, or any of its or their respective officers, directors, controlling persons (within the meaning of Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934), employees or agents shall have any liability to the Company or its security holders or creditors, or any person asserting claims on behalf of or in the right of the Company (whether direct or indirect, in contract, tort, for an act of negligence or otherwise) for any losses, fees, damages, liabilities, costs, expenses or equitable relief arising out of or relating to this Agreement or the services to be rendered hereunder, except losses, fees, damages, liabilities, costs or expenses that arise out of or are based on any action of or failure to act by BB&T Capital Markets and that are finally determined (by a court of competent jurisdiction and after exhausting all appeals) to have resulted primarily from the gross negligence, bad faith or willful misconduct of BB&T Capital Markets, in which case the Company shall be entitled to indemnification from BB&T Capital Markets in an amount up to but not exceeding the amount of the amount of the Fees actually paid by the Company to BB&T Capital Markets.

Accepted:

Title: Executive Director

Date: 5/9/18

Signature page to Addendum A of the Engagement Letter
Dated May 8, 2018 by and between BB&T Capital Markets
and

**EXHIBIT I**

FOIA Confidential Treatment Requested by Choice Advisors LLC

CHO-00002539